**Paul C. Galm, OSB No. 002600**
PAUL GALM, ATTORNEY AT LAW, LLC
12220 SW First Street
Beaverton, OR 97005
Telephone:    (503) 644-9000
Facsimile:    (503) 644-9050
Email:   paul@paulgalmlaw.com

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

|  |  |
|---|---|
| CORALIE JANE STEVENS, by and through Erin K. Olson, her duly-appointed conservator,<br><br>         Plaintiff,<br><br>  v.<br><br>NICOLE MARIE STEVENS, WESLEY ALLEN REAM, JR., WESLEY ALLEN REAM, SR., MATHEW DEAN ZIRBEL, ALPHA FOUNDATION, RAW FOUNDATION, ONYX FOUNDATION, SKYVIEW FOUNDATION, NWRN FOUNDATION, COBALT FOUNDATION, TRICK FOUNDATION, and FACE REALITIES FOUNDATION,<br><br>        Defendants. | **Case No. 3:24-cv-411**<br><br>**COMPLAINT**<br><br>(Federal Racketeering (18 U.S.C. § 1964(c)); Oregon Racketeering (ORS 166.725(7)(a)(B); Financial Abuse of a Vulnerable Person-ORS 124.110; Fraudulent Conveyance-ORS 95.200)<br><br><br>**DEMAND FOR TRIAL BY JURY** |

**Page 1 – COMPLAINT**

## JURISDICTION AND VENUE

1.      This action arises under the constitution and laws of the United States and jurisdiction is based on 28 USC § 1331 and 18 U.S.C. § 1964(c).

2.      This Court has supplemental jurisdiction of the state law claims pursuant to 28 USC § 1367.

## PARTIES

3.      Plaintiff Coralie Jane Stevens ("PLAINTIFF") is an unmarried 80-year-old resident of Woodburn, Oregon, who appears in this matter through her duly-appointed conservator, Erin K. Olson.  PLAINTIFF began exhibiting memory and cognitive impairment no later than October 2018, and by January of 2019, her primary care physician had diagnosed her with dementia.

4.      Defendant Nicole Marie Stevens ("STEVENS") is a 53-year- old resident of Molalla, Clackamas County, Oregon, and is PLAINTIFF's daughter and only child.

5.      Defendant Wesley Allen Ream, Jr., ("REAM JR.") is a 55-year-old resident of Molalla, Clackamas County, Oregon, and is STEVENS' longtime domestic partner.

6.      Defendant Wesley Allen Ream, Sr., ("REAM SR.") is an 81-year-old resident of Molalla, Clackamas County, Oregon, and is REAM JR.'s father.  REAM JR. and REAM SR. are hereinafter collectively referred to as "the REAMS."

7.      Defendant Mathew Dean Zirbel ("ZIRBEL") is a 52-year-old resident of Molalla, Clackamas County, Oregon.

8.      Defendant Alpha Foundation ("ALPHA FOUNDATION") is an unregistered assumed business name created on or about March 26, 2009.  On information and belief, ALPHA FOUNDATION is an alter ego of the REAMS that exists solely for the financial benefit of REAM SR., REAM JR., STEVENS, ZIRBEL, and known and unknown co-conspirators.

9.      Defendant Raw Foundation ("RAW FOUNDATION") is an unregistered assumed business name created on or about December 2, 2009.  On information and belief, RAW FOUNDATION is an alter ego of the REAMS that exists solely for the financial benefit of REAM JR., REAM SR., STEVENS, ZIRBEL, and known and unknown co-conspirators.

10.     Defendant Onyx Foundation ("ONYX FOUNDATION") is an unregistered assumed business name created on March 24, 2020.  On information and belief, ONYX FOUNDATION is an alter ego of STEVENS and the REAMS that exists solely for the financial benefit of STEVENS, REAM JR., REAM SR., ZIRBEL, and known and unknown co-conspirators.

11.     Defendant Skyview Foundation ("SKYVIEW FOUNDATION") is an unregistered assumed business name created no later than September 30, 2010.  On information and belief, SKYVIEW FOUNDATION is an alter ego of the REAMS that exists solely for the financial benefit of REAM JR., REAM SR., STEVENS, ZIRBEL, and known and unknown co-conspirators.

**Page 3 – COMPLAINT**

12.     Defendant NWRN Foundation ("NWRN FOUNDATION") is an unregistered assumed business name created on March 5, 2018.  On information and belief, NWRN FOUNDATION is an alter ego of ZIRBEL that exists solely for the financial benefit of ZIRBEL, REAM JR., REAM SR., STEVENS, and known and unknown co-conspirators.

13.     Defendant Cobalt Foundation ("COBALT FOUNDATION") is an unregistered assumed business name created in 2008.  On information and belief, SKYVIEW FOUNDATION is an alter ego of the REAMS that exists solely for the financial benefit of REAM JR., REAM SR., STEVENS, ZIRBEL, and known and unknown co-conspirators.

14.     Defendant Trick Foundation ("TRICK FOUNDATION") is an unregistered assumed business name created in or prior to 2019.  On information and belief, TRICK FOUNDATION is an alter ego of the REAMS that exists solely for the financial benefit of REAM JR., REAM SR., STEVENS, ZIRBEL, and known and unknown co-conspirators.

15.     Defendant Face Realities Foundation ("FACE REALITIES FOUNDATION") is an unregistered assumed business name created on or before June 7, 2023. On information and belief, FACE REALITIES FOUNDATION is an alter ego of the REAMS that exists solely for the financial benefit of REAM JR., REAM SR., STEVENS, ZIRBEL, and known and unknown co-conspirators.

**Page 4 – COMPLAINT**

## BACKGROUND ON "SELF-SUPPORTED MINISTRIES"

16.     As discussed in more detail below, defendants REAM SR., REAM JR., STEVENS, ZIRBEL, and known and unknown others have at times relevant to the claims in this complaint acted in concert to financially defraud others, evade taxes, fraudulently conceal assets from creditors, and avoid the financial consequences of illegal transactions through the creation of "Self-Supported Ministries" identified as "foundations," including but not limited to their alter egos, ALPHA FOUNDATION, RAW FOUNDATION, ONYX FOUNDATION, SKYVIEW FOUNDATION, NWRN FOUNDATION, COBALT FOUNDATION, TRICK FOUNDATION, and FACE REALITIES FOUNDATION (collectively, "Defendant Foundations").

17.     Self-Supported Ministries (hereinafter "SSMs") such as the Defendant Foundations are the brainchild of Richard J. Humpal ("Humpal"), a deceased former resident of the State of California.  Starting as far back as the 1990s, Humpal began promoting SSMs as a vehicle for engaging in and concealing fraudulent transactions, including hiding ill-gotten assets, evading payment of taxes, and defrauding citizens and governmental agencies.

18.     Humpal identified the specific benefits of SSMs in a series of manifestos, the most prolific of which is attached hereto as Exhibit 1 (the "Manifesto").  The Manifesto outlines how others can use SSMs to financially defraud others, evade taxes, fraudulently conceal assets from creditors, and avoid the financial consequences of illegal transactions.

**Page 5 – COMPLAINT**

19.    Specifically, according to the Manifesto, SSMs can operate in complete privacy immune from governmental oversight and regulation, and can be used to:

    a.  Hide assets in the SSMs such that "attorneys will have a hard time trying to collect any judgments against you personally";

    b.  Remove assets from taxation;

    c.  Engage in corporate tax evasion;

    d.  Create immunity from lawsuits;

    e.  Evade payment of personal taxes; and

    f.  Create Medicaid eligibility by transferring assets that would otherwise disqualify a person from government-funded residential care.

20.    Humpal began recruiting and teaching others across the United States about how to start and operate SSMs as part of an interstate association of SSMs.  In exchange, Humpal extracted a fee or percentage of the financial gain achieved using the SSMs. Later, Humpal's SSM strategy was marketed on the internet, and it can now be purchased for an $899.00 "donation" at https://selfsupportedministry.com.

**TIMELINE OF RELEVENT EVENTS**

21.    In approximately 2009, Humpal joined forces with the REAMS in Oregon, and the three began using an SSM formed by Humpal ("SafeHaven Foundation") as well as SSMs formed by the REAMS including ALPHA FOUNDATION and COBALT FOUNDATION to engage in a foreclosure rescue scheme in which they would represent distressed homeowners, promising to eliminate or greatly reduce their mortgage debt by

**Page 6 – COMPLAINT**

exposing and challenging the predatory lending practices of their lenders, in exchange for a "donation" to one of the SSMs.  As part of the scheme, one of the REAMS would record a fraudulent "Full Reconveyance" on behalf of the lender and trustee, then a few days later would record a "Grant Deed" or "Warranty Deed" executed by the distressed homeowners in which they transferred a 95% interest in their real property to ALPHA FOUNDATION and the other 5% interest to Humpal.

22.    Some of the distressed homeowners in the REAMS' foreclosure rescue scheme went on to form other "auxiliary" or "associated" SSMs, such as NOM Foundation and JT Foundation.  The REAMS also went on to create new SSMs, and by 2018, the REAMS claimed a "consortium of 27 select self-sustaining ministry groups."

23.    In line with the Manifesto, Defendants would accept "donations" from people within and outside of Oregon, including other SSMs, and deposit them in accounts of the Defendant Foundations and/or use them to fund the purchase of real property to be titled to SSMs, including Defendant Foundations, for the purposes of concealing assets from creditors, evading personal and business tax obligations through donations and transfers of money and property to SSMs, defrauding others (including government entities) through the wrongful taking, transfer, and concealment of assets, and avoiding the financial consequences of illegal transactions.

24.    Defendants also used the SSMs to hide funds that were improperly or illegally obtained, often transferring such funds to other SSMs and/or retitling real

**Page 7 – COMPLAINT**

properties in different SSMs to make it difficult for creditors and governmental agencies to track and recover said funds.

25.    At all times relevant, Defendants have worked together as part of an association-in-fact (the "Enterprise") for the purposes described in the Manifesto and above, *i.e.* using SSMs for the purposes of concealing assets from creditors, evading personal and business tax obligations through donations and transfers of money and property to SSMs, defrauding others (including government entities) through the wrongful taking, transfer, and concealment of assets, and avoiding the financial consequences of illegal transactions.

26.    On or about November 30, 2018, REAM SR. sent a letter to the Oregon Department of Forestry on behalf of RAW FOUNDATION and 27 auxiliary SSMs offering to purchase the Elliott State Forest for $320.8 million, which was $100 million over the offering price of $220.8 million.  A true copy of the offer letter is attached as Exhibit 2, and a true copy of the Press Release issued at the direction of REAM SR. and posted on the COBALT FOUNDATION's website is attached hereto as Exhibit 3.

27.    On December 18, 2018, REAM SR. appeared before the Oregon State Land Board along with attorney James Schaller, who presented the offer to the Board along with assurances that the SSMs represented by REAM SR. did not intend to do much logging on the property.

28.    On or about March 15, 2019, REAM JR. purchased a 19.5-acre parcel of bank-owned property with a situs address of 15021 S. Macksburg Road, Molalla, Oregon,

**Page 8 – COMPLAINT**

97038 ("Macksburg Road property"), for stated consideration of $576,450.00.  REAM

JR. financed the purchase with a 12-month mortgage loan of $604,000.00.

29.    On or about March 28, 2019, STEVENS accompanied PLAINTIFF to a

medical appointment at the request of PLAINTIFF's physician.   STEVENS commented

to PLAINTIFF's physician at that appointment that she had noted short term memory

loss in PLAINTIFF.  PLAINTIFF's weight was recorded as 126.5 lbs at this appointment.

30.    On July 5, 2019, REAM JR. executed a Statutory Warranty Deed

transferring the Macksburg Road property to ZIRBEL for stated consideration of

$680,000, which ZIRBEL financed in substantial part with a conventional 30-year first

mortgage loan of $620,000 executed by ZIRBEL in his individual capacity on July 3,

2019.  The Statutory Warranty Deed and Deed of Trust for the mortgage were recorded

July 16, 2019.

31.     ZIRBEL's mortgage loan application included a document created by

STEVENS, who falsely identified herself as a "Tax Specialist," attesting to ZIRBEL's

income sources, a copy of which is attached as Exhibit 4, as well as a document signed

by ZIRBEL falsely stating that he planned to sell the home he then lived in, and that he

had no relationship to the seller of the Macksburg Road property, i.e. REAM, JR., a copy

of which is attached as Exhibit 5.

32.    On or about July 5, 2019, ZIRBEL executed a Simple Promissory Note for

$80,000 on behalf of himself and NWRN FOUNDATION payable to RAW

**Page 9 – COMPLAINT**

FOUNDATION.  The Simple Promissory Note, a copy of which is attached as <u>Exhibit 6</u>, was signed by ZIRBEL as borrower, REAM JR. as lender, and STEVENS as a witness.

33.     On or about July 17, 2019, ZIRBEL executed a Quit Claim Deed transferring 17.545 acres of the Macksburg Road property to RAW FOUNDATION for stated consideration of $10,000.00, which deed was recorded July 18, 2019.

34.     On or about July 25, 2019, ZIRBEL executed and recorded a Quit Claim Deed transferring the remaining 3.934 acres of the Macksburg Road property to NWRN FOUNDATION for stated consideration of $950,000.00.

35.     On August 16, 2019, REAM JR.'s mortgage obligation of March 15, 2019, was satisfied, and a Full Reconveyance was recorded on September 23, 2019.

36.     On or about November 15, 2019, RAW FOUNDATION executed a Quit Claim Deed transferring the 3.934-acre parcel of the Macksburg Road property to NWRN FOUNDATION for stated consideration of $950,000.00.

37.     On December 9, 2019, REAM JR. opened an account at OnPoint Community Credit Union in the name of RAW FOUNDATION, listing himself and no others as authorized signers on the accounts.  The account application signed by REAM JR. describes RAW FOUNDATION's business purpose as:  "Church providing education and social services."

38.     On December 26, 2019, REAM SR. opened an account at OnPoint Community Credit Union in the name of ALPHA FOUNDATION, listing himself and no others as authorized signers on the accounts.  The account application signed by REAM

**Page 10 – COMPLAINT**

SR. describes ALPHA FOUNDATION's business purpose as: "Church providing education and social services."

39.     On or about May 20, 2020, STEVENS opened business checking and savings accounts at OnPoint Community Credit Union in the name of ONYX FOUNDATION (hereinafter collectively "ONXY FOUNDATION bank account"), listing herself and no others as authorized signers on the accounts. The account application signed by STEVENS describes ONYX FOUNDATION's business purpose as: "Church providing education and social services."

40.     On or about May 22, 2020, STEVENS contacted PLAINTIFF's physician while at Wells Fargo Bank attempting to add herself to PLAINTIFF's bank accounts using a "Power of Attorney for Management of Property and Personal Affairs" executed by PLAINTIFF in 2012 that named STEVENS as her attorney-in-fact that was to become effective only upon PLAINTIFF's incapacity, a copy of which is attached as Exhibit 7. At STEVENS' urgent request, PLAINTIFF's physician wrote a letter addressed "To whom it may concern" that read, "Due to a diagnosis of dementia please allow patient['s daughter Nicole Stevens to help manage patient['] financial funds and to be on her bank account. Patient is unable to manage this on her own." A true copy of the physician's letter is attached as Exhibit 8.

41.     On May 22, 2020, Wells Fargo Bank accepted the physician's letter as proof of PLAINTIFF's incapacity, and added STEVENS as an authorized signer to PLAINTIFF's accounts as STEVENS' agent under the power of attorney.

**Page 11 – COMPLAINT**

42.     Oregon law (ORS 127.045) required STEVENS to use the 2012 power of attorney for PLAINTIFF's benefit.

43.     On May 29, 2020, STEVENS wrote a check for $40,000 on PLAINTIFF's Wells Fargo checking account payable to "Onyx Foundation" and deposited it into the ONYX FOUNDATION bank account STEVENS had established on May 20, 2020. Prior to the deposit of the $40,000 check, the ONYX FOUNDATION bank account had total funds of $107.00.

44.     On or about June 5, 2020, a check in the amount of $6,396.82 drawn on RAW FOUNDATION's account at OnPoint Community Credit Union was used to make ZIRBEL's mortgage loan payment on the Macksburg Road property.

45.     On June 5, 2020, STEVENS used PLAINTIFF's power of attorney and the letter written by PLAINTIFF's physician attached as Exhibit 8 to direct that all of PLAINTIFF's investment and retirement accounts at Stifel, Nicolaus & Company be liquidated and the proceeds transferred to the ONYX FOUNDATION bank account.

46.     On or between June 8, 2020, and July 22, 2020, all of PLAINTIFF's investment and retirement accounts at Stifel, Nicolaus & Company were liquidated at STEVENS request, and funds totaling $349,948.50 were electronically transferred (EFT) via the Automated Clearing House (ACH) in five separate transactions into the ONYX FOUNDATION bank account.  Of the liquidated funds, at least $285,291.82 were in tax-deferred retirement accounts.

**Page 12 – COMPLAINT**

47.    The liquidation and transfer of STEVENS accounts at Stifel, Nicolaus & Company created federal and state income tax liability of $104,604 for PLAINTIFF, which STEVENS did not pay, resulting in substantial interest and penalties assessed against STEVENS by the Internal Revenue Service and the Oregon Department of Revenue.

48.    On June 26, 2020, STEVENS withdrew $2,000.00 in cash from the ONYX FOUNDATION bank account.

49.    On June 30, 2020, a member-to-member transfer of $8,900.00 was made from an account at OnPoint Community Credit Union in the name of RAW FOUNDATION for which REAM JR. was the only authorized signer into the ONYX FOUNDATION bank account.

50.    On June 30, 2020, check #102 drawn on the ONYX FOUNDATION bank account was used to pay the real property taxes for the parcel at 14751 S. Leabo Road in Molalla, which property was then titled to SKYVIEW FOUNDATION.

51.    On or about July 6, 2020, a check in the amount of $6,396.82 drawn on RAW FOUNDATION's account at OnPoint Community Credit Union was used to make ZIRBEL's mortgage loan payment on the Macksburg Road property.

52.    On or about July 23, 2020, ALPHA FOUNDATION recorded a Quit Claim Deed signed July 14, 2020, transferring a 5-acre parcel of land in Lake County, Oregon, which is further described in Exhibit 23, to TRICK FOUNDATION for stated consideration of $40,000.00.

**Page 13 – COMPLAINT**

53.     On July 27, 2020, STEVENS withdrew $7,500.00 in cash from the ONYX FOUNDATION bank account.

54.     On July 29, 2020, STEVENS posted on Facebook a photo of a Voodoo Racing emblem from Kettle Falls, Washington with a notation, "Met some great people from Kettle Falls, Wes got a new toy can you guess what it is?"

55.     On July 30, 2020, STEVENS posted on Facebook that she "is feeling happy at Silverwood Theme Park," and the ONYX FOUNDATION bank account statement for the month of July 2020 lists numerous debit card payments to Silverwood Theme Park in Athol, Idaho.

56.      On or about August 4, 2020, a check in the amount of $6,396.82 drawn on RAW FOUNDATION's account at OnPoint Community Credit Union was used to make ZIRBEL's mortgage loan payment on the Macksburg Road property.

57.     On August 14, 2020, STEVENS withdrew $9,000.00 in cash from the ONYX FOUNDATION bank account.

58.     On or about August 18, 2020, using a cashier's check for $25,000.00 drawn on the ONYX FOUNDATION bank account, REAM JR. and STEVENS purchased a Bobcat 337 Excavator, and RAW FOUNDATION later claimed to own a 50% interest in the Excavator after the purchase.

59.     On August 20, 2020, STEVENS withdrew $7,000.00 in cash from the ONYX FOUNDATION bank account.

**Page 14 – COMPLAINT**

60.     On or about August 27, 2020, STEVENS wrote a check for $10,000.00 on the ONYX FOUNDATION bank account to purchase a Maxey Trailer from a seller in Kettle Falls, Washington, which STEVENS and REAM JR., retrieved.  The seller deposited the check into her account at Banner Bank in the State of Washington.

61.     On or about September 8, 2020, a check in the amount of $6,267.39 drawn on RAW FOUNDATION's account at OnPoint Community Credit Union was used to make ZIRBEL's mortgage loan payment on the Macksburg Road property.

62.     On or about September 14, 2020, ZIRBEL opened an account at OnPoint Community Credit Union in the name of NWRN FOUNDATION listing himself and his 19- year-old son as authorized signers on the account.  The account application signed by ZIRBEL describes NWRN FOUNDATION's business purpose as:  "Church providing education and social svcs."

63.     On September 25, 2020, STEVENS withdrew $9,000.00 in cash from the ONYX FOUNDATION bank account.

64.     On October 6, 2020, a check in the amount of $6,267.39 drawn on RAW FOUNDATION's account at OnPoint Community Credit Union was used to make ZIRBEL's mortgage loan payment on the Macksburg Road property.

65.     On October 7, 2020, REAM JR. and STEVENS were contacted by phone by a Human Services Investigator with the Multnomah County Department of County Human Services who was investigating a report of suspected financial elder abuse that had been made by Stifel, Nicolaus & Company concerning STEVENS' liquidation of

**Page 15 – COMPLAINT**

PLAINTIFF's retirement and brokerage accounts.  Both STEVENS and REAM JR. falsely told the investigator that the accounts were liquidated because they were not earning enough investment income, and STEVENS falsely assured the investigator that STEVENS' funds were in an OnPoint account and had not been spent, although STEVENS had by this point spent $62,635.00 of the funds.

66.    On October 8, 2020, the Adult Protective Services investigator mailed STEVENS and REAM JR. letters stating that the allegation of financial abuse made against them "was found to be Substantiated."

67.    On October 16, 2020, STEVENS withdrew $9,000.00 in cash from the ONYX FOUNDATION bank account.

68.    Also on October 16, 2020, STEVENS accompanied PLAINTIFF to an appointment at her physician's office, where she was found to weigh 88.75 lbs, having lost 30% of her body weight since the first appointment STEVENS accompanied her to on March 28, 2019.

69.    On or about October 17, 2020, STEVENS wrote a check on PLAINTIFF's Wells Fargo account for $20,000 payable to "Raw Foundation" with the notation "Donation" in the memo line, and the check cleared RAW FOUNDATION's account at OnPoint Community Credit Union on October 19, 2020.

70.    On October 19, 2020, STEVENS withdrew $9,000.00 in cash from the ONYX FOUNDATION bank account.

**Page 16 – COMPLAINT**

71.     On October 26, 2020, STEVENS deposited a check for $79.20 payable to her into the ONYX FOUNDATION bank account.  This deposit, along with the transfer of $8,900.00 transfer from RAW FOUNDATION described in paragraph 48 and a $100.00 birthday gift to STEVENS from PLAINTIFF that was deposited on August 31, 2020, were the only funds deposited into the ONYX FOUNDATION bank account that were not stolen from PLAINTIFF.

72.     On or about October 28, 2020, STEVENS wrote a check for $2,500.00 on PLAINTIFF's Wells Fargo account as a deposit on an assisted living apartment at a Woodburn senior living community.

73.     On or about November 2, 2020, STEVENS wrote a check for $7,000.00 on the ONYX FOUNDATION bank account to make a down payment on a 1981 Marooka track wheel dump truck that she had arranged to purchase for $11,000.00 from a seller on Facebook Marketplace.  The check was delivered to the seller by REAM JR. and REAM SR., and cleared the ONYX FOUNDATION bank account on November 4, 2020.  The balance of $4,000.00 was paid to the seller in cash when the Marooka was delivered.

74.     On November 3, 2020, STEVENS executed a residency agreement and other documents for PLAINTIFF to move into an assisted living facility in Woodburn as a private-pay resident at a total monthly rental rate of $4,470.00.

75.     On November 6, 2020, a check in the amount of $6,267.39 drawn on RAW FOUNDATION's account at OnPoint Community Credit Union was used to make ZIRBEL's mortgage loan payment on the Macksburg Road property.

**Page 17 – COMPLAINT**

76.     On or about November 12, 2020, STEVENS moved PLAINTIFF into the assisted living facility in Woodburn, Oregon.  STEVENS paid the balance of PLAINTIFF's November rent with a check drawn on PLAINTIFF's Wells Fargo checking account.

77.     On December 4, 2020, STEVENS paid PLAINTIFF's December rent at the assisted living facility in a check for $4,070.00 drawn on PLAINTIFF's Wells Fargo checking account and a check for $400.00 on the ONYX FOUNDATION bank account. The $400.00 paid to the assisted living facility was the only withdrawal of funds from the ONYX FOUNDATION bank account either before or after December 4, 2020, that benefitted PLAINTIFF.

78.     On or about December 11, 2020, a check in the amount of $6,267.39 drawn on RAW FOUNDATION's account at OnPoint Community Credit Union was used to make ZIRBEL's mortgage loan payment on the Macksburg Road property.

79.     On January 2, 2021, STEVENS paid $1,700.00 toward PLAINTIFF's December rent at the assisted living facility from PLAINTIFF's Wells Fargo bank account.

80.     On January 4, 2021, the business manager of the assisted living facility texted STEVENS to inquire when the rest of the rent payment would be made, and STEVENS responded by text that PLAINTIFF had "run out of funds," and that STEVENS had applied for Medicaid.

**Page 18 – COMPLAINT**

81.    Also on January 4, 2021, using a cashier's check for $24,500.00 drawn on the ONYX FOUNDATION bank account, REAM JR. and STEVENS purchased a Ford F-450 pickup after responding to a posting by the seller on Craigslist.  RAW FOUNDATION later claimed to own a 50% interest in the pickup after the purchase.

82.    On or about January 11, 2021, a check in the amount of $6,267.39 drawn on RAW FOUNDATION's account at OnPoint Community Credit Union was used to make ZIRBEL's mortgage loan payment on the Macksburg Road property.

83.    On or about January 12, 2021, STEVENS submitted information online to the Oregon Department of Human Services to apply for Medicaid coverage for PLAINTIFF.  In the information she submitted, STEVENS indicated that PLAINTIFF's non-income assets included a total of $1,472.39.

84.    On January 20, 2021, an assumed business name of "Molalla Mafia Espresso" was registered with the Oregon Secretary of State by COBALT FOUNDATION as registrant and REAM JR. as Authorized Representative.  The stated business activity of the company was "espresso kiosk, coffee, Italian soda, muffins[,] scones, food," and its principal place of business was 1011 West Main Street, Molalla, Oregon.

85.    On January 21, 2021, STEVENS signed an "Authorized Representative and Alternate Payee" form to act on PLAINTIFF's behalf in Oregon Department of Human Services and Oregon Health Authority benefits matters, designating herself as PLAINTIFF's authorized representative and alternate payee using her power of attorney.

**Page 19 – COMPLAINT**

The form was received in the Woodburn office of Northwest Senior and Disability Services on January 25, 2021.

86.    On February 2, 2021, using a cashier's check dated February 1, 2021, for $201,979.04 payable to First American Title Company drawn on the ONYX FOUNDATION bank account, a parcel of real property at 1011 W. Main Street in Molalla, Oregon ("the Main Street property") was purchased in the name of REAM JR. for stated consideration of $200,000.00.

87.    Except as otherwise set forth above, the remainder of the funds stolen from PLAINTIFF that were deposited into the ONYX FOUNDATION bank account were spent by STEVENS via debit card and online transfers to other accounts of Defendant Foundations for personal expenditures of STEVENS, REAM JR., their daughter, and, except for immaterial amounts, family and friends other than PLAINTIFF.

88.    Upon information and belief, the equipment purchased with the funds in the ONYX FOUNDATION account, *i.e.* the Bobcat 337 Excavator described in paragraph 58, Maxey Trailer described in paragraph 60, 1981 Marooka track wheel dump truck described in paragraph 73, and Ford F-450 pickup described in paragraph 81, were for the use of the defendants in developing the properties purchased by individual defendants and retitled to the Defendant Foundations.

89.    On March 2, 2021, a search warrant was executed by the Multnomah County Sheriff's Office at the residential property where the REAMS and STEVENS lived, along with other family members.

**Page 20 – COMPLAINT**

90.     On April 5, 2021, STEVENS called attorney Dean Gisvold, who had prepared the 2012 power of attorney referenced in paragraph 40 along with PLAINTIFF's will and other estate planning documents, and requested copies of PLAINTIFF's estate planning documents as well as copies of any previously-executed wills.  Unaware that STEVENS was under investigation for stealing PLAINTIFF's life savings, Gisvold emailed her copies of the executed estate planning documents he had prepared for PLAINTIFF in 2012.

91.     On April 6, 2021, REAM JR. transferred the Main Street Property to RAW FOUNDATION for stated consideration of $200,000.00.

92.     On November 15, 2021, a Multnomah County grand jury returned an indictment against STEVENS charging her with Aggravated Theft in the First Degree (2 counts) and Criminal Mistreatment in the First Degree (2 counts).

93.     On November 25, 2021, STEVENS forged PLAINTIFF's signature on a "Request for Restitution Form" sent by the Multnomah County District Attorney's Office to crime victims, and checked the box next to "I am not requesting restitution." STEVENS returned the form, a copy of which is attached as <u>Exhibit 9</u>, to the District Attorney's office.

94.     On December 9, 2021, STEVENS signed PLAINTIFF's name on a Medicaid eligibility renewal form attesting under penalty of perjury that information set forth therein to qualify PLAINTIFF for Medicaid was accurate, and returned the form to the Oregon Department of Human Services.

**Page 21 – COMPLAINT**

95.     On December 15, 2021, STEVENS was arraigned on the Multnomah County indictment.

96.     On March 11, 2022, ZIRBEL opened another account at OnPoint Community Credit Union in the name of NWRN FOUNDATION listing himself and his 25-year-old daughter as authorized signers on the account.  Again, the account application signed by ZIRBEL describes NWRN FOUNDATION's business purpose as: "Church providing education and social svcs."

97.     On March 11, 2022, in a Statutory Bargain and Sale Deed recorded March 14, 2022, NWRN FOUNDATION transferred .934 acres of the Macksburg Road property, which is further described in Exhibit 19, to SKYVIEW FOUNDATION for stated consideration of $10,000.00.

98.     Also on March 11, 2022, in a Statutory Bargain and Sale Deed recorded March 28, 2022, NWRN FOUNDATION transferred 1.5 acres of the Macksburg Road property, which is further described in Exhibit 20, to TRICK FOUNDATION for stated consideration of $10,000.00.

99.     On May 24, 2022, in a Statutory Bargain and Sale Deed recorded the same day, NWRN FOUNDATION transferred 1.5 acres of the Macksburg Road property to ZIRBEL for stated consideration of $10,000.00.

100.    Also on May 24, 2022, in a Statutory Bargain and Sale Deed recorded July 13, 2022, ZIRBEL transferred 1.5 acres of the Macksburg Road property to SKYVIEW FOUNDATION for stated consideration of $10,000.00.

**Page 22 – COMPLAINT**

101.    On June 3, 2022, ZIRBEL executed a Statutory Warranty Deed correcting the vesting deed executed May 24, 2022, and also executed a Deed of Trust to secure a conventional first mortgage loan of $501,500.00, both of which were recorded June 8, 2022.

102.    On July 18, 2022, ZIRBEL executed a second "Statutory Bargin [sic] and Sale Deed" transferring the same 1.5-acre parcel of the Macksburg Road property as described in paragraph 100, which is further described in <u>Exhibit 17</u>, to SKYVIEW FOUNDATION for stated consideration of $10,000.00, which deed was recorded July 19, 2022.

103.    On December 13, 2022, STEVENS signed PLAINTIFF's name on a Medicaid renewal form attesting under penalty of perjury that information qualifying PLAINTIFF for Medicaid was accurate, and returned the form to the Oregon Department of Human Services.

104.    Between STEVENS' arraignment on the indictment charging her with theft of PLAINTIFF's funds on December 15, 2021, and the commencement of her criminal trial, STEVENS withdrew an additional $10,106.11, including $7,340 in ATM cash withdrawals, for personal purchases that did not benefit PLAINITFF, other than perhaps $79.90 spent on flowers delivered to PLAINTIFF on Valentine's Day 2023 accompanied by a card stating they were from STEVENS, REAM JR., and their daughter.

105.    On February 28, 2023, STEVENS' criminal trial commenced in Multnomah County Circuit Court.

**Page 23 – COMPLAINT**

106.    On March 1, 2023, STEVENS falsely testified to the Multnomah County jury that the funds stolen from PLAINTIFF were an inheritance from her maternal grandfather that PLAINTIFF had agreed to invest for her, and STEVENS presented false, fraudulent, and forged documents, copies of which are attached as Exhibits 10-15, in support of her false defense in an effort to legally justify and fraudulently conceal her theft of PLAINTIFF's funds.

107.    On March 1, 2023, the Multnomah County jury hearing STEVENS' criminal case returned a verdict of "guilty" on all counts, and STEVENS was taken into custody pending sentencing.

108.    On March 27, 2023, a petition to appoint a conservator for PLAINTIFF was filed in Marion County Circuit Court that described the theft and misappropriation of funds by STEVENS and REAM JR., and stated that prompt protective litigation would be initiated to preserve the assets from which PLAINTIFF's funds could be recovered.  The petition was served by mail on STEVENS at the Multnomah County Inverness Jail on March 30, 2023.

109.    On March 30, 2023, a civil lawsuit was filed in Clackamas County Circuit Court against STEVENS, the REAMS, ZIRBEL, RAW FOUNDATION, ONYX FOUNDATION, SKYVIEW FOUNDATION, and NWRN FOUNDATION, alleging claims for Financial Abuse of a Vulnerable Person under ORS 124.110 and Fraudulent Conveyance per ORS 95.200 *et seq*.

**Page 24 – COMPLAINT**

110.    On April 10, 2023, RAW FOUNDATION, acting through REAM SR., signed and recorded a "Statutory Bargin [sic] and Sale Deed" transferring the Main Street property, as further described in <u>Exhibit 16</u>, to ALPHA FOUNDATION for stated consideration of $950,000.00.

111.    On April 19, 2023, PLAINTIFF filed a First Amended Complaint in the Clackamas County Circuit Court case adding ALPHA FOUNDATION as a defendant.

112.    On April 21, 2023, STEVENS was sentenced to 29 months prison in the Multnomah County criminal case.

113.    On May 12, 2023, ALPHA FOUNDATION acting through REAM SR., signed and recorded a "Statutory Bargin [sic] and Sale Deed" transferring the Main Street property back to RAW FOUNDATION for stated consideration of $950,000.00.

114.    On June 6, 2023, "Skyveiw [sic] Foundation," acting through REAM SR., signed and recorded a "Statutory Bargin [sic] and Sale Deed" transferring the .934 acre parcel of the Macksburg Road property to COBALT FOUNDATION for stated consideration of $10,000.

115.    Also on June 6, 2023, "Skyveiw [sic] Foundation," acting through REAM SR., signed and recorded a "Statutory Bargin [sic] and Sale Deed" transferring a 1.38 parcel of the Macksburg Road property, which is further described in <u>Exhibit 21</u>, to COBALT FOUNDATION for stated consideration of $10,000.  The deed was re-recorded July 13, 2023, with the spelling of SKYVIEW FOUNDATION corrected.

116.    On June 7, 2023, RAW FOUNDATION, acting through REAM SR., signed and recorded a "Statutory Bargin [sic] and Sale Deed" transferring a 13.61 acre parcel of the Macksburg Road property, which is further described in <u>Exhibit 18</u>, to FACE REALITIES FOUNDATION for stated consideration of $10,000.

117.    On June 7, 2023, "Skyveiw [sic] Foundation," acting through REAM SR., signed and recorded a "Statutory Bargin [sic] and Sale Deed" transferring the property at 14751 S. Leabo Road in Molalla, Oregon, as further described in <u>Exhibit 22</u>, to TRICK FOUNDATION for stated consideration of $850,000.00.

118.    On June 12, 2023, RAW FOUNDATION deeded two 40-acre parcels of recreational land in Lake County, Oregon, as further described in <u>Exhibits 24 and 25</u>, to COBALT FOUNDATION for stated consideration of $20,000.00.

119.    On June 12, 2023, "Skyveiw [sic] Foundation," acting again through REAM SR., signed and re-recorded, to correct an incomplete land description in the deed described in paragraph 117, a "Statutory Bargin [sic] and Sale Deed" transferring the property at 14751 S. Leabo Road in Molalla, Oregon, to TRICK FOUNDATION for stated consideration of $850,000.00.

120.    As-of the date this complaint is filed, the real properties that are proceeds and/or instrumentalities of the Enterprise described herein are titled as followed, and more fully described in the corresponding exhibits:

**Page 26 – COMPLAINT**

| Exh # | Property | Tax Lot # | Current Foundation Owner |
|-------|----------|-----------|--------------------------|
| 16 | 1011 W. Main Street (1.27 acres) | 52E08BC08703 | RAW |
| 17 | Macksburg Road (1.5 acres) | 52E03A 01400 | SKYVIEW |
| 18 | Macksburg Road (13.61 acres) | 52E03A 01401 | FACE REALITIES |
| 19 | Macksburg Road (.93 acre) | 52E03A 01402 | COBALT |
| 20 | Macksburg Road (1.5 acres) | 52E03A 01403 | TRICK |
| 21 | Macksburg Road (1.38 acres) | 52E03A 02000 | COBALT |
| 22 | 14751 S. Leabo Rd. (19.69 acres) | 52E33 01501 | SKYVIEW or TRICK |
| 23 | Lake County #1 (5 acres) | 1402 – 1336 | TRICK |
| 24 | Lake County #2 (40 acres) | 1402 – 7100 | COBALT |
| 25 | Lake County #3 (40 acres) | 1402 – 7450 | COBALT |

## <u>FIRST CLAIM FOR RELIEF</u>
### FEDERAL RICO – 18 U.S.C. § 1964(c)
### (Against All Defendants)

121.    PLAINTIFF re-alleges and incorporates by reference all previously alleged paragraphs.

122.    All defendants are "persons" within the meaning of 18 U.S.C. § 1961(3) and ORS 166.715(5).

123.    Individual defendants REAM SR., REAM JR., STEVENS, and ZIRBEL, along with known and unknown others, organized, managed, participated, and were alter egos or members of one or more of the Defendant Foundations.

124.    Individual defendants and Defendant Foundations and other known and unknown SSMs were associated-in-fact and constituted an "Enterprise" within the meaning of 18 U.S.C. § 1961(4) and ORS 166.715(2), the purposes for which were concealing assets from creditors, evading personal and business tax obligations through donations and transfers of money and property to SSMs, defrauding others (including

**Page 27 – COMPLAINT**

government entities) through the wrongful taking, transfer, and concealment of assets, and avoiding the financial consequences of illegal transactions.

125.   Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) because they committed two or more of the following predicate acts of racketeering activity, and PLAINTIFF was injured in her property by reason of those acts:

a.   STEVENS and ONYX FOUNDATION, with the specific intent to defraud PLAINTIFF, engaged in multiple acts of wire fraud in violation of 18 U.S.C. § 1343 by obtaining PLAINTIFF's money and investments from Wells Fargo Bank and Stifel, Nicolaus & Company by means of false or fraudulent pretenses, representations, or promises, to-wit:  STEVENS' use of PLAINTIFF's power of attorney to transfer or deposit PLAINTIFF's funds into ONYX FOUNDATION's bank account for their own benefit and that of other defendants, and not for PLAINTIFF's benefit, by means of wire communication in interstate commerce through ACH transfers on 5 occasions as further alleged in paragraphs 45-46, and by clearance of a check  necessary to complete and conceal a fraud, and as further alleged in paragraph 43.

b.   STEVENS, ONYX FOUNDATION, REAM JR., and RAW FOUNDATION, with the specific intent to defraud PLAINTIFF, engaged in multiple acts of wire fraud in violation of 18 U.S.C. § 1343 by obtaining PLAINTIFF's money from Wells Fargo Bank by means of false or fraudulent pretenses,

**Page 28 – COMPLAINT**

representations, or promises, to-wit:  STEVENS' use of PLAINTIFF's power of attorney to withdraw PLAINTIFF's funds and deposit them into RAW FOUNDATION's bank account for their own benefit and that of the other defendants, and not for PLAINTIFF's benefit, by means of wire communication in interstate commerce through clearance of a check necessary to complete and conceal the fraud, and as further alleged in paragraph 69.

c.   STEVENS, ONYX FOUNDATION, REAM JR., and RAW FOUNDATION, with the specific intent to defraud PLAINTIFF, engaged in multiple acts of wire fraud in violation of 18 U.S.C. § 1343 and money laundering in violation of 18 U.S.C. § 1956(a)(1) by using funds they knew had been stolen from PLAINTIFF that were held in ONYX FOUNDATION's bank account to purchase the Bobcat 337 Excavator described in paragraph 58, Maxey Trailer described in paragraph 60, 1981 Marooka track wheel dump truck described in paragraph 73, and Ford F-450 pickup described in paragraph 81.  The checks used to purchase the listed equipment were thereafter deposited in the sellers' bank accounts, and cleared ONYX FOUNDATION's bank account by means of wire communication in interstate commerce, which clearance was necessary to complete and conceal the thefts from PLAINTIFF.

d.  All defendants, knowing that the real property transfers involved in the transactions described in paragraphs 30, 33-34, 36, 52, 90, 97-102, 110, and 113-119 represented the proceeds of some form of activity that constituted a

felony under state or federal law, and which in fact involved the proceeds of wire fraud in violation of 18 U.S.C. § 1343, with the intent to promote the carrying on of the wire fraud, and knowing that the transaction was designed in whole or in part to conceal or disguise the location and source of the proceeds of the wire fraud, engaged in multiple acts of money laundering in violation of 18 U.S.C. § 1956 (a)(1)(A) and (B).

e. The individual defendants, RAW FOUNDATION, and NWRN FOUNDATION, in violation of 18 U.S.C. § 1341 (mail fraud), having devised or intended to devise a scheme for obtaining property by means of false or fraudulent pretenses and representations as described in paragraphs 30-31, and for the purpose of executing or attempting to execute such scheme, placed in the mail for delivery by the Postal Service no fewer than eight payments of funds toward ZIRBEL's purchase money mortgage on the Macksburg Road property, which was then titled to NWRN FOUNDATION, that were obtained or made available at least in part by the theft of PLAINTIFF's funds described in preceding paragraphs.  The payments, which are further described in paragraphs 44, 51, 56, 61, 64, 75, 78, and 82, were in the form of checks signed by REAM JR. that were drawn on the RAW FOUNDATION's bank account and mailed to out-of-state mortgage servicing companies.

f. STEVENS, the REAMS, ONYX FOUNDATION, RAW FOUNDATION, ALPHA FOUNDATION, knowing that the funds involved in the purchase and

transfers of the Main Street property as described in paragraphs 86, 90, 110, and 113 represented the proceeds of some form of unlawful activity, conducted financial transactions which in fact involved the proceeds of wire fraud (18 U.S.C. § 1343), and knowing that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the wire fraud proceeds, engaged in multiple acts of money laundering in violation of 18 U.S.C. § 1956 (a)(1)(A) and (B).

g.   STEVENS, with the specific intent to defraud PLAINTIFF and state and federal agencies administering Medicaid funds, and as specifically described in the Manifesto, engaged in wire fraud in violation of 18 U.S.C. § 1343 by stealing PLAINTIFF's funds as described in paragraphs 43, 45-46, and 69 in order to represent that PLAINTIFF was qualified for Medicaid, and transferring the stolen funds to ONYX FOUNDATION and RAW FOUNDATION, then used wire communications to text PLAINTIFF'S assisted living facility and to apply for Medicaid benefits online as alleged in paragraphs 80 and 83, claiming PLAINTIFF was "out of funds."

126.    The racketeering activities engaged in by the Enterprise as described above affected interstate commerce.

127.    Pursuant to 18 U.S.C. § 1964(c), PLAINTIFF is entitled to recover treble damages plus costs and attorney fees.

**Page 31 – COMPLAINT**

## SECOND CLAIM FOR RELIEF
### ORICO – ORS 166.725
### (Against All Defendants)

128.    PLAINTIFF re-alleges and incorporates by reference paragraphs 121-124.

129.    Defendants engaged in a pattern of racketeering activity within the meaning of ORS 166.715(4) because they committed two or more of the following predicate acts of racketeering activity and those acts caused injury to PLAINTIFF:

a.  STEVENS committed perjury, in violation of ORS 162.065, as alleged in paragraph 106, which illegal activity constituted racketeering activity as it is defined under ORS 166.715(6)(a)(B).

b.  STEVENS tampered with physical evidence, in violation of ORS 162.295(1)(a), by knowingly offering false physical evidence at her criminal trial as described in paragraph 106, to-wit:  Exhibits 10-15 attached hereto, which illegal activity constituted racketeering activity as it is defined under ORS 166.715(6)(a)(C).

c.  REAM JR. attempted to tamper with a witness, in violation of ORS 162.285, by repeatedly calling PLAINTIFF on the phone, believing PLAINTIFF may be called as a witness in the criminal trial described in paragraphs 104-107, in an effort to induce PLAINTIFF (who was referred to as "Red Car" in recorded conversations with STEVENS) to unlawfully withhold testimony and/or be absent from the trial, which illegal activity constituted racketeering activity as it is defined under ORS 166.715(6)(a)(C).

**Page 32 – COMPLAINT**

d.  STEVENS committed forgery in the second degree, in violation of ORS
165.007, by falsely completing the Restitution Form attached hereto as <u>Exhibit</u>
<u>9</u>, which illegal activity constituted racketeering activity as it is defined under
ORS 166.715(6)(a)(P).

e.  STEVENS drained nearly all of PLAINTFF'S money and concealed the funds
in RAW FOUNDATION and ONYX FOUNDATION in order to unlawfully
obtain public or medical assistance with the intent to enable PLAINTIFF to
meet or appear to meet the eligibility requirements for long-term care medical
benefits, in violation of ORS 411.630, which illegal activity constituted
racketeering activity as it is defined under ORS 166.715(6)(a)(Y).

f.  On multiple occasions between July 7, 2019 and June 12, 2023, including
those described in paragraphs 33-35, 52, 91, 97-102, 110, 113-119, REAM JR.,
REAM SR., and ZIRBEL, using all Defendant Foundations except ONYX
FOUNDATION, tampered with public records in violation of ORS 162.305 by
making false entries in real property deeds and submitting them to the
Clackamas County Recorder's Office for recording pursuant to law or in
connection with the transaction of public business despite knowing those real
property deeds contained false information concerning the consideration
provided and the actual owner of the property, which illegal activity
constituted racketeering activity as it is defined under ORS 166.715(6)(a)(C).

**Page 33 – COMPLAINT**

130.    Each of the incidents of racketeering activity described in paragraph 129 had the same or similar intents and results, which were those described in the Manifesto referred to in paragraph 19 and attached hereto as <u>Exhibit 1</u>, and have a nexus to the same Enterprise, as described paragraph 124.

131.    Each of the above incidents of racketeering activity described in paragraph 129 occurred within five years of each other and are not isolated incidents but rather form a "Pattern of Racketeering Activity" as defined under ORS 166.715(4).

132.    Pursuant to ORS 166.725(7)(a), PLAINTIFF demands three-fold her actual damages and punitive damages, together with her reasonable attorney fees pursuant to ORS 166.725(14).

133.    Pursuant to ORS 166.725(1)(a), PLAINTIFF further requests the divestiture by the individual defendants of their interests in the Defendant Foundations, including their real properties.

134.    Pursuant to ORS 166.725(1)(b), PLAINTIFF further requests an injunction forbidding Defendants from forming, operating, supervising or participating in any SSMs in the future.

135.    Pursuant to ORS 166.725(1)(c), Plaintiff further requests an order dissolving all Defendant Foundations.

136.    Pursuant to ORS 166.725(14)(a), PLAINTIFF requests her reasonable attorney fees.

**Page 34 – COMPLAINT**

## THIRD CLAIM FOR RELIEF
## FINANCIAL ABUSE OF A VULNERABLE PERSON – ORS 124.110
### (Against All Defendants)

137.    PLAINTIFF realleges and incorporates herein all previously alleged paragraphs.

138.    At all times relevant, PLAINTIFF was a vulnerable person as defined in ORS 124.100(1)(e) inasmuch as she was an elderly person and a financially incapable person as those are defined in ORS 124.100(1)(a) and (b).

139.    As part and in furtherance of their conspiracy and the Enterprise as alleged in paragraphs 16-25, STEVENS, REAM JR., REAM SR., ZIRBEL, and their alter ego Defendant Foundations, acting in concert, and for their own benefit based on the strategy set forth in the Manifesto, wrongfully took or appropriated $409,948.50 in PLAINTIFF's money or property, or knowingly permitted the wrongful taking or appropriation of PLAINTIFF's money or property by failing to act under circumstances in which a reasonable person should have known of the financial abuse.

140.    As part and in furtherance of their conspiracy and the Enterprise as alleged in paragraphs 16-25, STEVENS, REAM JR., REAM SR., ZIRBEL, and their alter ego Defendant Foundations, acting in concert, have also acted in bad faith in failing to return or take reasonable steps to make available the funds or the property acquired with them, as requested by PLAINTIFF when she filed a civil action in Clackamas County Circuit Court demanding their return.

**Page 35 – COMPLAINT**

141.    As a result of defendants' actions as alleged in herein, PLAINTIFF has suffered inconvenience, mental suffering, emotional distress, humiliation, loss of comfort, interference with her normal and usual activities, and mistrust in the intentions of others, all to her noneconomic damage in an amount to be determined by the jury.

142.    As a result of defendants' violations of ORS 124.110(1)(a) and (b) as alleged herein, pursuant to ORS 124.100(2)(a) and (b), PLAINTIFF is entitled to an award of treble her economic and noneconomic damages in amounts to be determined by the jury.

143.    Pursuant to ORS 124.120(2), PLAINTIFF further seeks the remedy for defendants' fraudulent conveyance of property as set forth in her FIFTH CLAIM FOR RELIEF, together with an order restraining further transfers, and imposition of a constructive trust on assets of the defendants purchased in whole or part with funds taken from PLAINTIFF, including but not limited to the Main Street Property, the Macksburg Road Property and the Marooka described in paragraph 73.

144.    Pursuant to ORS 124.100(2)(c) and (d), PLAINTIFF demands from defendants her reasonable attorney fees and reasonable fees for the services of her conservator in bringing this claim.

## FOURTH CLAIM FOR RELIEF
### FINANCIAL ABUSE OF A VULNERABLE PERSON – ORS 124.110
### (Against STEVENS)

145.    PLAINTIFF realleges and incorporates herein all previously alleged paragraphs.

**Page 36 – COMPLAINT**

146.    Between November 9, 2021, and February 6, 2023, STEVENS used an

ATM/Debit card obtained using PLAINTIFF's power of attorney and physician's letter to

withdraw $7,340 from ATMs and to debit an additional $2,766.11 from PLAINTIFF's

Wells Fargo bank account, which funds and purchased items STEVENS used for her own

benefit and/or for the direct or indirect benefit of others besides PLAINTIFF, including

some or all of the other defendants identified herein, thereby wrongfully taking or

appropriating PLAINTIFF's funds within the meaning of ORS 124.110(1)(a).

147.    As a result of STEVENS' actions as alleged in paragraph 146, PLAINTIFF

has suffered inconvenience, mental suffering, emotional distress, humiliation, loss of

comfort, interference with his normal and usual activities, and mistrust in the intentions

of others, all to her noneconomic damage in an amount to be determined by the jury.

148.    As a result of STEVENS' violations of ORS 124.110 as alleged in this

Fourth Claim for Relief, pursuant to ORS 124.100(2)(a) and (b), PLAINTIFF is entitled

to an award of three times her economic and noneconomic damages in amounts to be

determined by the jury.

149.    Pursuant to ORS 124.100(2)(c) and (d), PLAINTIFF demands from

defendants her reasonable attorney fees and reasonable fees for the services of her

conservator in bringing this claim.

**Page 37 – COMPLAINT**

## FIFTH CLAIM FOR RELIEF
## FRAUDULENT CONVEYANCE – ORS 95.200 *et seq.*

### (Against All Defendants Except STEVENS and ONYX FOUNDATION)

150.    PLAINTIFF realleges and incorporates herein all previously-alleged paragraphs.

151.    No later than October 7, 2020, when an Adult Protective Services investigator spoke with STEVENS and REAM JR. to question them about the liquidation of PLAINTIFF's Stifel investment accounts, and well after the wrongful conduct as alleged in paragraphs 43 and 45-46, all defendants knew or in the exercise of reasonable care should have known that PLAINTIFF had a claim or claims against them arising from the events and harms as alleged in paragraphs 39-64 herein.

152.    The transfers of the Main Street property as alleged in paragraphs 91, 110, and 113 were made with the actual intent to hinder, delay, or defraud PLAINTIFF.

153.    The transfers of the Main Street property as alleged in paragraphs 91, 110, and 113 were made without receipt of a reasonably equivalent value in exchange for the transfers, and the transferors reasonably should have believed they would incur debts beyond their ability to pay as they became due.

154.    The transfers alleged in paragraphs 152 and 153 were to insiders as defined in ORS 95.200(7), the individual defendant alter egos of the transferors retained control of the property after the transfer, and the individual defendant alter egos of the transferors and/or the transferors had been sued prior to the transfers occurring in 2023.

**Page 38 – COMPLAINT**

155.    The transfers of the Macksburg Road property as alleged in paragraphs 97-100, 102, and 114-116 were made with the actual intent to hinder, delay, or defraud PLAINTIFF.

156.    The transfers of the Macksburg Road property as alleged in paragraphs 97-100, 102, and 114-116 were made without receipt of a reasonably equivalent value in exchange for the transfer, and the transferors reasonably should have believed they would incur debts beyond their ability to pay as they became due.

157.    The transfers alleged in paragraphs 155 and 156 were to insiders as defined in ORS 95.200(7), the individual defendant alter egos of the transferors retained control of the property after the transfer, and the individual defendant alter egos of the transferors and/or the transferors had been sued prior to the transfers occurring in 2023.

158.    The transfer of the property at 14751 S. Leabo Road as alleged in paragraphs 117 and 119 was made with the actual intent to hinder, delay, or defraud PLAINTIFF.

159.    The transfers of the property at 14751 S. Leabo Road as alleged in paragraphs 117 and 119 were made without receipt of a reasonably equivalent value in exchange for the transfer, and the transferors reasonably should have believed they would incur debts beyond their ability to pay as they became due.

160.    The transfers alleged in paragraphs 158 and 159 were to insiders as defined in ORS 95.200(7), the individual defendant alter egos of the transferors retained control

**Page 39 – COMPLAINT**

of the property after the transfer, and the individual defendant alter egos of the transferors and/or the transferors had been sued prior to the transfers.

161.    The transfers of the Lake County properties as alleged in paragraph 118 were made with the actual intent to hinder, delay, or defraud PLAINTIFF.

162.    The transfers of the Lake County properties as alleged in paragraph 118 were made without receipt of a reasonably equivalent value in exchange for the transfer, and the transferors reasonably should have believed they would incur debts beyond their ability to pay as they became due.

163.    The transfers alleged in paragraphs 161 and 162 were to insiders as defined in ORS 95.200(7), the individual defendant alter egos of the transferors retained control of the property after the transfer, and as to the transfer described in paragraph 118, the individual defendant alter egos of the transferors and/or the transferors had been sued prior to the transfers.

## PRAYER

WHEREFORE, PLAINTIFF prays for the following relief:

In her First Claim for Relief against all Defendants for Federal RICO, in violation of 18 U.S.C. § 1964(c):

1.    Treble economic damages in an amount to be determined by the jury;

2.    Attorney fees; and

3.    Costs and disbursements incurred herein.

**Page 40 – COMPLAINT**

In her Second Claim for Relief against all Defendants for Oregon RICO, in violation of ORS 166.720(1)-(4):

1.    Treble economic damages pursuant to ORS 166.725(7)(a);

2.    Punitive damages pursuant to ORS 166.725(7)(a);

3.    Divestiture by all Defendants of any interest in Defendant Foundations pursuant to ORS 166.725(a)(a);

4.    Order forbidding Defendants from forming, operating, supervising or participating in any SSMs in the future pursuant to ORS 166.725(1)(b);

5.    Dissolution of all Defendant Foundations pursuant to ORS 166.725(1)(c);

6.    Attorney fees pursuant to ORS 166.725(14)(a);

7.    Costs and disbursements incurred herein; and

8.    Any and all other remedies available to the court pursuant to ORS 166.725.

In her Third Claim for Relief against all Defendants for Financial Abuse of a Vulnerable Person for their violations of ORS 124.110(1)(a) and (b):

1.    Treble economic damages pursuant to ORS 124.100(2)(a).

2.    Treble non-economic damages pursuant to ORS 124.100(2)(b);

3.    Attorney and conservator fees pursuant to ORS 124.100(2)(c) and(d); and

4.    Costs and disbursements incurred herein.

In her Fourth Claim for Relief against STEVENS for Financial Abuse of a Vulnerable Person for her violation of ORS 124.110(1)(1):

1.    Treble economic damages pursuant to ORS 124.100(2)(a).

**Page 41 – COMPLAINT**

2.      Treble non-economic damages pursuant to ORS 124.100(2)(b);

3.      Attorney and conservator fees pursuant to ORS 124.100(2)(c) and(d); and

4.      Costs and disbursements incurred herein.

In her Fifth Claim for Relief against all Defendants Except STEVENS and ONYX

FOUNDATION for Fraudulent Conveyance in violation of ORS 95.200 *et seq.*:

1.      Declaring the transfers to be void;

2.      Granting an injunction against any transfer of any interest in the properties

during the pendency of this action;

4.      Granting PLAINTIFF an attachment lien on the properties;

5.      Granting judgment against defendants in favor of PLAINTIFF in the

amount of the money award rendered against them in the First through

Third Claims for Relief herein or the amount of the value of the individual

defendants' interests in the properties, whichever is less and according to

proof;

6.      For PLAINTIFF's costs and disbursements incurred herein; and

7.      For such other and further relief as the court may deem just and equitable.

DATED this 5th day of March, 2024.

PAUL GALM, ATTORNEY AT LAW, LLC

/s/ Paul Galm
paul@paulgalmlaw.com

Trial Attorney: Paul Galm

**Page 42 – COMPLAINT**