# EXHIBIT 1
# Page 1 of 2

## WHAT YOU CAN DO WITH YOUR "SELF-SUPPORTED MINISTRY"

Many people have asked, "Is there a list of things one's "Self-Supported Ministry" (SSM), can do that might help us ascertain the value of having our own SSM? Here is a reply prepared by Dr. R. J. Humpal, (JD) who was the one who "developed" the first known written "Declaration of Self-Supported Ministry" of an un-incorporated organized church/ministry as the "*otherwise*" described in Title 26 USC (IRS Code):

1. **Operate in complete privacy.** Since the SSM is not incorporated, it is a *private*, lawful entity that is the "exception" rather than being "exempt" from regulation regarding all entities controlled by the government which includes all 501(c)3 corporations. Therefore, you can now lawfully operate in complete privacy.

2. **Receive an income tax deduction.** All donations made to your SSM from yourself, friends, relatives, clients, patients and fund raising events are fully deductible from the donor's taxes as provided by law.

3. Remove assets from other taxation. All gifts (donations), to your SSM are removed from Estate, Gift and Capital Gains tax exposure.

4. **Receive donations or gifts of all kinds of assets.** Your SSM may accept donations of all kinds of assets. (Real property, stocks, vehicles, boats, planes, clothing, furniture and money.)

5. **Receive funds from deferred gifts.** Your SSM may receive donations from wills, trusts, life insurance or any other deferred gift.

6. **Immune from liability of lawsuits.** By placing all of your assets into a SSM, attorneys will have a hard time trying to collect any judgments against you personally. (If they can collect anything at all.) As the saying goes, "You can't get blood out of a turnip".

7. **Reduce you own personal tax liability.** By placing your "income" into your SSM, your own personal tax liability will be reduced. This can be done by having your employer make the payroll checks out in the name of the SSM or wire the funds directly to the SSM's bank account.

8. **Reduce your business's tax liability.** By making the SSM the lawful owner of most of the stock or ownership in an existing business, your business's tax liability will decrease.

9. **Open bank accounts all over the world.** There is no need to have an "off-shore" trust or corporation since a SSM is allowed to exist all over the globe. However, one may have to physically open the account in another country and give the bank a local address for your SSM.

10. **Gifting to other Countries.** U.S. Taxpayers cannot deduct gifts to overseas charitable projects unless they do so through another charitable entity such as the SSM.

11. **Personal compensation for the work you do.** A SSM is allowed to provide for the payment of anyone that works for it. This can be done by using the "Workers Contract" that is provided in all of the Self Supported Ministries provided by Dr. R. J. Humpal. Since FRNs (Federal Reserve Notes) are used as "payment" (exchange), the transaction should not be a taxable event according to United Stated Codes. FRNs are "Obligations of the United States". "Obligations" are not taxable, unless you or your entity is a corporation or a *public* organization.

# EXHIBIT 1
## Page 2 of 2

12.    Allow your SSM to make the payment for all expenses. All expenses that are required for the operation and growth of the SSM are allowed. Yes, you can have the SSM pay for all of your transportation, clothing, food, and shelter. (Remember, you are working for God now.)

13.    Bank accounts are private. The checking account set up for the SSM does not have any social security number associated with it. However, the bank may want to check your own social security for personal identification only. Every bank should open up an account without having any "DBA" associated with it. Remember, the SSM is not a business in the commercial world.

14.    You are in control. Since there is no "trustee" or "office of the president" involved in the SSM, you can be directly involved with all of the legal transactions regarding the SSM.

15.    No ending date for the SSM. The SSM does not have a date where it comes to an end. There is no ending date for any reporting because there is nothing to report.

16.    Not taxable. The SSM is not required to file ANY tax return.

17.    Non-political. The SSM is not political in any manner even though it may be "created" by contract somewhere in the united states of America. However, the SSM may write or verbally "report" to others regarding the truth or opinion of any matter going on world-wide.

18.    May be funded or supported by other businesses. Since the SSM is just that--a SELF-SUPPORTED Ministry--to survive, it *must* be supported/financed by activities that make money. This can be done by having some or all of your "supporting business" profits go directly into the account of the SSM. In fact, the SSM itself can, and should have activities that support itself. Remember, the SSM is *SELF-SUPPORTED*!

19.    Not regulated by the Government for corporations. Remember the Amish? They can build what they want on their property without "code enforcement" from the government. They do not need licenses to operate. They are left alone by the government. The SSM should be operated just like they operate their "work". If they can do "it", then the SSM can do "it".

20.    Your self-esteem. Your light should shine among men so that they might see what you do. If everyone who calls himself a Christian would have his own SSM, there would be a lot more money for the Church (God's people). Now you are actually working for God, rather than for "men". This will have a great effect on one's attitude. After all, Christ said "Carry your OWN cross". We should not to let someone else carry it. Now you're "giving" is not just a tenth. It is now EVERYTHING that you have, own, and will do. (Get the picture?)

21.    Your ability to influence your children. Many who have a SSM enjoy the opportunity to impact their families by "leading by example" not only in the home, but also in their church and community. You can now add "significance" to your lifetime of work.

22.    Other considerations. Perhaps the worst thing for an older person to have are assets. Many older people have had all of their hard earned assets levied on and actually had them taken (stolen) by the government by being admitted to a health care facility. If one is wealthy, the wealth can actually be "used" up quite fast and nothing will be left for their heirs. By placing all of their assets, *ahead of time*, into a SSM, they can now lawfully state that they do not "own" anything and can now be fully covered by federal and/or state coverage. (Medicare) If they are in need of anything, the SSM can take care of them. The SSM can be managed by them until their designated successor takes over. Remember, the SSM does not die. It can "live" forever.

2

**Elliot Forest Land Sale**

Summary
By: Raw Foundation
Including 27 auxiliaries throughout Oregon
Christian Ministries

Oregon Department of Forestry
2600 State Street
Salem, OR 97310

Noevember 30, 2018

RE: Elliot Forest Lands

This summary is in regard to the 82,500.00 acres of forest land for sale in the amount of $220.8 million. We are interested in purchase of the property, not for the purposes of logging. We want to sustain the lands as they are, we would like to use part of the lands for recreation. Hunting will continue to be regulated by the state gaming commission, fishing allowed during season.

We will hire 40 workers to maintain the acreage generally, recreational grounds, clean up if any, general management of the lands. Logging will be maintained to a minimum of 500 acres a year, spread out so as not to leave damage to the forest. If in the case that a forester advises us differently, we will act accordingly. Proceeds to fund maintenance of property, taxes and expenses. Our goal to is to maintain the lands as natural forest land.

We are prepared to offer by donation, totaling $320.8 million.

The 27 auxiliary ministries are not 501©3's.

If you have any questions or ideas regarding our intentions or offer, please call us.

Wes Ream
503-829-9589

**EXHIBIT 3**
**Page 1 of 1**

FOR IMMEDIATE RELEASE
December 26, 2018

### Foundation offered $320.8 million for Elliott State Forest

Molalla, Or – A consortium of 27 select self-sustaining ministry groups offered the State of Oregon $320.8 million for the Elliott State Forest on December 18, 2018 at a state land board meeting in Salem, Or.

The offer tendered by Raw Foundation, an IRS approved non-profit foundation, was $100 million more than the $220.8 million asking price for the 82,500-acre forest located in Coos County, Oregon. This offer would allow the state land board to pay off any existing debt in the form of bonds estimated to be about $120 million. The remaining proceeds would then go to the common school fund as prescribed by law.

Raw Foundation, a Christian Ministry, was invited to bid with other public entities and met the December 5, 2018 bid deadline.

The bid from Raw Foundation would not use the $100 million previously allocated to the Common School Fund and is $200 million more than any other bid that came forth from the invited participants.

Plans for the Elliott State Forest by Raw Foundation and its 27 auxiliary groups include but not limited to the following multiple use principles:

- Hiring of 40 Oregonians per year as stated in SLB requirements
- Maintain open public places
- Build an public RV park not to exceed 10 acres
- Build a lodge next to Loon Lake for auxiliary needs and retreats
- Maintain recreation uses including horse back and hiking trails, fishing, hunting
- Select harvesting practices in keeping with guidelines

"Forest management would take place within 500 acre parcels spread across the 82,500 acre forest," said Raw Foundation attorney Jim Schaller. "It is the intent of the foundation members to support local state, county and city economies."

### Offer to Oregon State University

Additionally, Raw Foundation would like to offer Oregon State University Department of Forestry an opportunity to aid in the forest research of the timberland and wildlife, as they expressed an interest in doing so at the December 18, 2018 board meeting, but also said they could not raise the required $120.8 million.

A scholarship fund would be established from logging proceeds to the OSU School of Forestry for students who seek careers in forestry and who would like to participate in internships at the Elliott State Forest, according to foundation members.

#### In closing,

This generous offer far outweighs offers from the other four invited entities who participated in the Department of State Lands hearing in Salem, Oregon, December 18th 2018. The offer would free up taxpayer funded obligations and allow the State of Oregon to use the bonded indebtedness for other public purposes.

For more information email: cobaltfoundation@gmail.com

Website: www.cobalt-foundation.com

**EXHIBIT 4**
**Page 1 of 1**

Nicole Stevens
Tax Specialist
14751 S Leabo Rd
Molalla, Or 97038

To whom it may concern:

Matt Zirbel has come to me for the past 3 years for his tax services. In addition to his employment with G & H Trucking, in 2016 he started a home-based mechanics business to fulfill The needs of other truck drivers in his area. He does not have employees. He is not required to obtain An EIN or business license.

Sincerely,

Nicole Stevens



To whom it may concern,

I regards to the home I currently live in on Toliver Road. Once I move out my plan is to do some cosmetic fix-ups to the property and then sale the property.

I found the home on Macksburg Road because I live in the same area of this property and put an offer on the property. I have no relationship to the seller

Thank you,

Matt Zirbel

Simple Promissory Note

Molalla ___ Oregon ___          7/5/20th
City                State                    Date

Matt Zirbel and or
NWRN Foundation agrees and promises to pay to RAW Foundation

the sum of ($80,000.⁰⁰ Dollars for value received, with interest at the annual rate of

% payable after _9%, on or before 3 months from 7/6/2019

                                                Matt Zirbel and or
If this note is in default and is placed for collection. NWRN ___ shall pay all
                                                Foundation

reasonable costs of collection and attorneys' fees

_Matt zg_ 7-5-19 By _MATT ZIRBEL_
(Borrower)        (Date)

_Wes Ream_ 7/5/2019 By _Wes Ream_
(Lender)          (Date)

_[signature]_ 7/5/19
(Witness)        (Date)

# POWER OF ATTORNEY FOR
# MANAGEMENT OF PROPERTY AND PERSONAL AFFAIRS

I, Coralie J. Stevens, hereby appoint my daughter, Nicole Marie Stevens, as my agent and attorney in fact (my "*Agent*"). **This Power of Attorney shall only become effective upon the event of my incapacity, as defined in paragraph 26, below, or upon my further written certification authorizing my Agent to exercise authority under this instrument.** My Agent shall have the following power:

1. ***General Management of Property.*** To take possession of, manage, administer, operate, maintain, improve and control all my property, real and personal, to insure and keep the same insured and to pay any and all taxes, charges and assessments that may be levied or imposed upon thereof.

2. ***Debts Receivable.*** To collect and receive any money, property, debts or claims whatsoever, as are now or shall hereafter become due, owing and payable or belonging to me and to give receipts, acquittances or other sufficient discharge for any of the same.

3. ***Expenditures for My Care.*** To make expenditures for my care, support, maintenance and reasonable comforts.

4. ***Securities Transactions.*** To make investments and changes of investments in such income bearing securities, including common and preferred stocks of corporations, or other property, real or personal, as my Agent, in my Agent's sole discretion, may deem prudent; this shall include transactions with broker–dealers or any companies holding securities or accounts.

5. ***Exercise Voting Rights.*** To appear and vote for me in person or as my proxy at any corporate or other meeting.

6. ***Payment or Pursuit of Claims.*** To pay my debts and other obligations, to sue upon, defend, compromise, submit to arbitration or adjust any controversies in which I may be interested, and to act in my name in any complaints, proceedings or suits with all the powers I would possess if personally present and under no legal disability.

7. ***Purchase Property.*** To bargain for, buy, and deal in property and goods of every description.

8.   ***Deal With Real Property Interests.***  To grant, sell, mortgage, pledge, grant security interests in, consign, lease or hypothecate my real and personal property; and to otherwise deal in and with my real and personal property.

9.   ***Execute Contracts and Other Documents.***  To make and deliver any conveyances, contracts, covenants and other instruments, undertakings or agreements, either orally or in writing, of whatever kind and nature which my Agent, in my Agent's sole discretion, shall deem to be for my best interests.

10.   ***Financial Institutions.***  To take any actions my Agent believes necessary or desirable in connection with any financial institution in which I have an account or an interest in an account including the power to: (a) continue, modify, or terminate existing accounts; (b) open new accounts; (c) draw, endorse, and deposit checks, drafts, and other negotiable instruments; (d) prepare, receive, and deliver financial statements; (e) withdraw any monies deposited with any financial institution in my name or in the name of myself and any other person or persons; (f) establish, maintain, have access to, or close any safety deposit box that has been rented in my name or in the name of myself and any other person or persons; (g) apply for and receive travelers checks and letters of credit; and (h) extend payment periods with respect to commercial paper.  For the purposes of this instrument, the term "*financial institution*" includes, but is not limited to, banks, trust companies, savings banks, commercial banks, building and loan associations, savings and loan companies or associations, credit unions, industrial loan companies, thrift companies, and brokerage firms.

11.   ***Borrow Funds.***  To advance its own funds on my behalf and to borrow any sums of money on my behalf or for my benefit on such terms and at such rate of interest as to my said Agent may seem proper and to give security for the repayment of the same.

12.   ***Appoint Other Agents.***  To appoint and substitute for itself, agents, or attorneys to perform any or all of the above duties and thereafter to revoke such authority, as it deems advisable.

13.   ***Tax Matters.***  To do the following with respect to the years 1986 through 2050: (a) pay any tax or assessment; (b) exercise my rights to protest and appeal assessments; (c) appear for and represent me, in person or by attorney, in all tax matters; (d) execute any power of attorney forms required by the Internal Revenue Service, the Oregon Department of Revenue, or any other taxing authority; (e) receive confidential information from any taxing authority; (f) prepare, sign, and file federal, state, and local tax returns and reports for all tax matters, including income, gift, estate, inheritance, generation-skipping, sales, business, FICA, payroll, and property tax matters; (g) execute waivers, including waivers of restrictions on assessment or collection of tax deficiencies and waivers of notice of disallowance of a claim for credit or refund; (h) execute consents, closing agreements, and other documents related to my tax

liability; (i) make any elections available under federal or state tax law; and (j) delegate authority or substitute another representative with respect to all matters described in this paragraph 13.

14. ***Savings Bonds and Other Government Securities.*** To purchase, redeem, invest or reinvest, change address and perform any other transactions as deemed necessary with regards to Series E, EE, H, and HH Bonds as well as U.S. Treasury Bills, Notes, Bonds or other securities issued or guaranteed by the U.S. Government its agencies or instrumentalities.

15. ***Collect Proceeds of Annuities.*** Without limiting the generality of the foregoing, to receive and collect all proceeds from any and all annuities owned by me (the "*Annuities*"), and to otherwise exercise all the powers which I might exercise over the Annuities; except the power to revoke or change the beneficiary designation on any of the Annuities. Only I may revoke the Annuities or change beneficiary designations. The issuer of any Annuities shall be entitled to rely on this power of attorney until it receives actual knowledge of any revocation of it.

16. ***Retirement Plans.*** To take any actions my Agent believes necessary or desirable in order to maintain or participate in any retirement plan in which I have an interest when this instrument is executed, or in which I later acquire an interest, including the power to select the manner in which benefits under the plan are to be paid; designate beneficiaries under the plan, including the power to designate himself, herself, or itself as the beneficiary; make voluntary contributions to the plan; make rollovers from one plan into another, to the extent authorized by the plan, and borrow from the plan and sell the assets of the plan.

17. ***Environmental Matters.*** Without limiting the generality of any other provisions of this Power of Attorney, and without liability to me or to anyone else, to do any or all of the following:

      (a)     inspect, review or require an environmental audit of any or all of my property or any property to be purchased for me or on my behalf or to otherwise be transferred to me or for my benefit;

      (b)     take any action that my Agent, in my Agent's sole discretion, determines to be necessary or desirable in order to prevent, abate, clean up or otherwise remedy any actual or potential violation of any laws or regulations (including, but not limited to, environmental laws) affecting my property;

      (c)     refuse to accept any property to be in any way transferred to me if, in my Agent's sole discretion, my Agent believes or determines that such property either is contaminated by any hazardous substance or is being used or has been used for any activity directly or indirectly involving any hazardous substance which could result in liability to me, or could otherwise impair the value of my property;

(d)      use any or all of my property to settle or compromise any and all claims against me which may be asserted by any governmental agency or other person involving the alleged violation of any applicable laws or regulations (including, but not limited to, environmental laws) affecting me or my property;

(e)      disclaim any power granted to my Agent under the terms of this instrument or under any statute or rule of law if my Agent, in my Agent's sole discretion, determines that the exercise of such power may cause my Agent to incur personal liability under any applicable laws or regulations, including, but not limited to, environmental laws.

My Agent shall have no liability to me or to anyone else for any decrease in the value of my property by reason of my Agent's compliance with all applicable laws and regulations, including, but not limited to, environmental laws, and including, but not limited to, my Agent's compliance with any reporting requirements under any applicable laws or regulations.  In addition, my Agent shall have no liability to me or to anyone else for purchasing or refusing to purchase any property for me or receiving or refusing to receive any property for me, or for inspecting or failing to inspect any of my property or for requiring or failing to require any environmental audits of any of my property or any property in any way to be transferred to me. Any acceptance, inspection or environmental audit or failure to accept, inspect or obtain an environmental audit will not be deemed to create any inference as to whether or not there is or may be any violation of any applicable laws or regulations with respect to that property, including, but not limited to, any violation of environmental laws.

For purposes of this paragraph 17, the term "*environmental laws*" means any federal, state or local law, rule, regulation or ordinance relating to the protection of the environmental or human health.  The term "*hazardous substances*" means any substance defined as hazardous or toxic or otherwise regulated by any environmental law and also includes without limitation petroleum products and crude oil.

18.      ***Elective Share Rights.***  To exercise any right to claim an elective share in any estate or under any will.

19.      ***Fiduciary Positions.***  To resign from or renounce on my behalf fiduciary positions, including personal representative, trustee, conservator, guardian, attorney-in-fact, and officer or director of a corporation; and discharge me from further responsibility by filing accountings with a court or settling by formal or informal methods.

20.      ***Mail.***  To redirect my mail.

21.   ***Custody of Documents.***  To take custody of important documents, including any will, trust agreements, deeds, life insurance policies, and contracts.

22.   ***Employees and Advisors.***  To employ, compensate, and discharge attorneys, accountants, investment advisors, property managers, custodians, physicians, dentists, nurses, household help, and others to render services to me or for my benefit.

23.   ***Nomination of Guardian and Conservator.***  To the extent permitted by state law, I nominate my Agent to act as my guardian and conservator if I become incapacitated.  If my Agent is unable or unwilling to act as my guardian or conservator, I nominate Susan T. Gisvold to act as my guardian or conservator.

24.   ***Third Party Reliance.***  Third parties who rely in good faith on the authority of my Agent under this power of attorney shall not be liable to me, to my estate, or to my heirs, successors, or assigns.  Third parties without actual notice of revocation may conclusively rely on the continued validity of this power of attorney.  If requested, my Agent shall furnish, and a third party may conclusively rely on, an affidavit or certificate stating that (a) I was competent at the time this power of attorney was executed, (b) the power of attorney has not been revoked, (c) my Agent continues to serve as attorney-in-fact under the power of attorney, and (d) my Agent is acting within the scope of authority granted under the power of attorney.  My Agent may sue or pursue other action against any third party who refuses to honor this power of attorney after such an affidavit or certificate has been provided.

25.   ***Perform Other Acts to Carry Out the Powers Granted.***  Execute and deliver any written instrument and perform any other act necessary or desirable to carry out any of the powers granted to my Agent under this power of attorney, as fully as I might do personally.  I ratify and confirm all acts performed by my Agent pursuant to this power of attorney.

26.   ***Incapacity" Defined.***  For purposes of the provisions of this instrument, the term "incapacity" shall mean the inability to manage business affairs or to coherently communicate business decisions due to physical or mental illness, age, or any other cause.  The fact of my incapacity shall be determined by my Agent upon written certification by any treating physician of mine.  A person acting in good faith shall not be liable for any acts or omissions by such person in reliance upon the determination of incapacity.

27.   ***Alternate Agent.***  If Nicole Marie Stevens is unable or unwilling to act as my Agent, I appoint Susan T. Gisvold as my Agent and attorney-in-fact.  If there are no persons or entities appointed by this instrument able or willing to act as my alternate Agent, then I authorize my Agent then serving to appoint an alternate person or entity to serve as my Agent and attorney-in-fact, to serve with full authority.  The term my "*Agent*" in this power of attorney shall include any alternate agent who is authorized to act under this paragraph.

28.    **Durability.**  The powers granted to my Agent under this power of attorney shall continue to be exercisable even though I have become disabled or incompetent.

29.    **Governing Law.**  The validity and construction of this power of attorney shall be determined under Oregon law.

---

I expressly declare that I am familiar with the provisions of Oregon law regarding the durability of powers of attorney, and that the powers of my Agent described above shall be exercisable by my Agent on my behalf notwithstanding that I may become legally disabled or incompetent.  I also understand that this Power of Attorney is not a "Power of Attorney for Health Care" or "Advance Directive," as defined under Oregon law.  I also expressly declare that this Power of Attorney has been reviewed by my attorney at law who has approved it as a matter of form.

IN WITNESS WHEREOF, I have executed this instrument on January 31, 2012, at Portland, Oregon.

_____
Coralie J. Stevens

**STATE OF OREGON**           )
                              )  ss.
**COUNTY OF MULTNOMAH**       )

The foregoing instrument was acknowledged before me on January 31, 2012, by Coralie J. Stevens.

_____
Notary Public - State of Oregon
My commission expires: _____4-28-2013_____

OFFICIAL SEAL
**PATRICIA A RICHARDSON**
NOTARY PUBLIC-OREGON
COMMISSION NO. 438877
MY COMMISSION EXPIRES APRIL 29, 2013

### *ACCEPTANCE BY AGENT*

I HEREBY ACCEPT the appointment as attorney in fact for Coralie J. Stevens and agree to exercise the authority granted to me in accordance with the terms of this instrument and with any instructions received in writing from Coralie J. Stevens.

Dated: February _9th_, 2012

_Nicole Marie Stevens_
Nicole Marie Stevens

**EXHIBIT 7**
**Page 8 of 8**

### *ACCEPTANCE BY ALTERNATE AGENT*

I HEREBY ACCEPT the appointment as alternate attorney in fact for Coralie J. Stevens and agree to exercise the authority granted to me in accordance with the terms of this instrument and with any instructions received in writing from Coralie J. Stevens.

Dated:  January _3/_ , 2012

*Susan T. Gisvold*
Susan T. Gisvold

**EXHIBIT 8**
**Page 1 of 1**



**LEGACY**
H E A L T H

LEGACY MEDICAL GROUP BROADWAY
1600 NE BROADWAY
PORTLAND OR 97232-1799 .
503-525-7599

May 22, 2020

Regarding-
Coralie J Stevens
1510 NE SCHUYLER ST
PORTLAND, OR 97212

To whom it may concern:

Due to a diagnosis of dementia please allow patients daughter Nicole Stevens to help manage patients financial funds and to be on her bank account. Patient is unable to manage this on her own.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

LEGACY MEDICAL GROUP BROADWAY



**EXHIBIT 9**
**Page 1 of 1**

## REQUEST FOR RESTITUTION

DEC 0 3 2021

SCANNED

VICTIM: CORALIE STEVENS                                    11-17-2021

DEFENDANT(S):            DA#:            COURT#:          DDA: SHULL
NICOLE MARIE STEVENS     2434291-1       21-CR-55764      UNIT: Unit A
                                                          AGENCY: Multnomah County Sheriff
                                                          INCIDENT #: 20-51396
                                                          INCIDENT DATE: 03/20/2021

---

**Please Check at least ONE box:**

[X] I am not requesting restitution.

[ ] My insurance company has covered the entire loss, except that I had to pay my insurance deductible
which is $_____. **Please complete section 1 below**

[ ] I have losses that were **not** or only **partially** covered by insurance. The total amount of my out of pocket
expenses (including any insurance deductible that I've paid) is $_____ as described below.
**Please complete sections 1, 2 and 3 below as appropriate**

Do you expect any future additional costs?  [ ] NO  [ ] YES  **Please attach explanation / estimate of future costs**

---

***If you are requesting ANY restitution in this case, you must submit supporting documents, such as medical bills,
insurance deductibles, receipts, repair estimates, etc. ***

**1.    INSURANCE** *N/A*
Please list each insurance company that you are aware is involved in this case. Under the "cost to you" please list any insurance related out of
pocket expenses that you have actually had to pay (a deductible or co-pay).  You will be able to itemize uncovered losses below.
*Insurance Company Information*

| | | |
|---|---|---|
| Company Name: _____ | Claim #: _____ | |
| Adjustor Name: _____ | Phone #: _____ | |

| This is: [ ] My insurance  [ ] Defendant's insurance | *Amount Paid by Insurance* | *Cost to You* |
|---|---|---|
| | | |

**2.    PROPERTY DAMAGE / LOSS** *N/A*
If you need more space, attach additional pages.  Please also attach copies of supporting documentation.

| *Item / Brief Description of Damage* | *Type of Expense* | *Cost to You* |
|---|---|---|
| | [ ] Estimated cost  [ ] Actual repair cost | |
| | [ ] Estimated cost  [ ] Actual repair cost | |

**3.    MEDICAL BILLS** *N/A*
If you need more space, attach additional pages.  Please also attach copies of supporting documentation.

| *TreatmentDate(s)* | *Hospital/Provider & Brief Description of Expense* | *Cost to You* |
|---|---|---|
| | | |
| | | |

| | Due to the injuries I sustained in this incident I could not work and lost wages that were not |
|---|---|
| [ ] | covered by sick time or workers compensation. *Please enter amount at right and attach documentation.* |

To the best of my knowledge, the above facts are true and accurate.

11/25/2024      *Coralie Stevens*              CORALIE STEVENS
Date            Signature                      Print Name

*In conformance with ORS 137.106(6)(a), the State hereby discloses and gives notice to the defense that all persons mentioned in this
document and/or in any attachments may be called by the State during the presentation of evidence at sentencing or at a Restitution Hearing.

Promissory Note

EXHIBIT 10
Page 1 of 1

august, 27, 1988

To Nicole Stevens for $500k
will be mature on August 23, 2000.

Coralie J. Stevens

Witness ~~Tom~~ C Welch

6003 SE Firwood
Milwaukie ore 97222

**EXHIBIT 11**
**Page 1 of 1**

August 27, 1988

My mom came to me and talked to me about my inheritance from my grand father of $500k, Mom said she thinks I should let her invest the money, She thinks I would spend it irresponsibly. She will take the money and invest it for me until I am of a responsible age 30 years old 2000. There will be a promissory note at my discretion.

Nicole Stevens

Coralie J. Stevens

# EXHIBIT 12
## Page 1 of 1

Stifel, Nicolaus & Company
IRA Funds

Date: _3/10/2019_

After much discussion on several occasions regarding the IRA accounts held by Stifel, Nicolaus & Company with Financial advisor Ken Funk, my mother Coralie Stevens and I Nicole Stevens have agreed to donate those proceeds in excess of $300,000.00 to Onyx Foundation in return for a tax donation. Funds are not to be donated until the year 2020.

Coralie Stevens _Coralie J Stevens_ Date: _3/10/2019_

Nicole Stevens _Nicole J Stevens_ Date: _3/10/2019_

STATE OF OREGON                    )
                                   ) SS.
COUNTY OF _Multnomah_              )

On _3/10/2019_ before me, _James H. Soderlind_
    Date          _Nicole M Stevens_ Name of Notary
personally appeared _Coralie J Stevens_____ who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity and that by his signature on the instrument is the person or the entity upon behalf of which this person acted.

_James H. Soderlind_
Notary Public                              commission expires _3-22-2019_



OFFICIAL SEAL
**JAMES HENRY SODERLIND**
NOTARY PUBLIC - OREGON
COMMISSION NO. 937287
MY COMMISSION EXPIRES MARCH 22, 2019

# EXHIBIT 13
## Page 1 of 1

Letter of Clarification

I Coralie Stevens am writing this on the advice of an attorney, I have been advised to write this letter so my daughter Nicole Stevens can use this notarized letter and the power of attorney, to get her inheritance money I invested for her. Years ago, I invested her inheritance money from her grandfather Kola McLellan. She can take this letter and the power of attorney to get her money from the investment account held at Stifel Nicolaus.

_Coralie J. Stevens_    3/11/2019
Coralie Stevens                    Date

OFFICIAL SEAL
JAMES HENRY SODERLIND
NOTARY PUBLIC - OREGON
COMMISSION NO. 937287
MY COMMISSION EXPIRES MARCH 22, 2019

_James H. Soderlind_    3/11/2019

**EXHIBIT 14**
**Page 1 of 1**

### FIRST MINUTES of

### ONYX FOUNDATION

1.     The Executive Director, **TERRANCE STEVEN APPLEBEE** of this Declaration of Christian Church Ministry hereby appoints **NICOLE MARIE STEVENS** and **CORALIE JANE STEVENS** as the Managing Directors under no obligation to said Executive Director. As evidenced by their signatures below, the managing Directors accepts, and the Executive Director acknowledges the appointment together with the responsibilities pertaining thereto.

_____ MARCH 24, 2010
Executive Director

_____ MARCH 24, 2010
Managing Director

_____ MARCH 24, 2010
Managing Director

2.     The duly appointed Managing Director by the power vested as Executive Director of this Declaration of Christian Church Ministry hereby declares this Declaration to be in full force and effect at the moment the Executive Director and the Managing Director hereof execute the signature page following; and by their signatures appearing below, pledge their honesty in all ministry matters. The Directors herein agree singly and collectively not to engage in any activity that will bring unfavorable reaction upon this Declaration of Christian Church Ministry. It is further agreed that all activity must have the Directors approval of any new activity not incorporated with the minutes at the time and new activity is put into being.

_____ MARCH 24, 2010
Executive Director

_____ MARCH 24, 2010
Managing Director

_____ MARCH 24, 2010
Managing Director

7

7.      ALL DOCUMENTS, CONTRACTS, conveyances, deeds, quit-claims, assignments, assignments of all or part of the title to any asset or property of this Ministry and other legal instruments shall be executed by singing the name: **ONYX FOUNDATION** by any one (1) Executive Director, or any one (1) Managing Director.

8.      NOTICE IS HEREBY GIVEN TO ALL PEOPLE, PERSONS, CORPORATIONS, ENTITIES or other firms extending credit to, contracting with, or having claims against this Ministry or its Directors that they must look solely to the funds, property and other assets of this Ministry for payment or for settlement of any claims, debts, judgements (decree), award, or other obligation which may become payable thereunder. All action, claims and/or suits against this private Ministry MUST be adjudicated by  the Seventh Amendment of Constitution for the united states of America.  The Directors are not personally liable when dealing with the properties or business matters if this Ministry nor is this Ministry personally liable for properties or business matters of the Directors.

The name of the Executive Director is: **TERRANCE STEVEN APPLEBEE**

The name of the Managing Directors is: ~~NICOLE MARIE STEVENS~~ and **CORALIE JANE STEVENS.**

Executive Directors Signature: _____ Date: 3-28-2010

Managing Directors Signature: _____ Date: 3-28-2010

Managing Directors Signature: _____ Date: 3-28-2010

IN WITNESS WHEREOF the Executive and Managing Directors asseverate the above and hereunto set his/her or their hand(s) and seal(s) this 28th day of March 2010, in the common law Oregon Republic, being one of the union of these united states of America.

We the undersigned witness this day that the ones known to us to be the avowed signatures appeared before us this day and acknowledged that they signed and delivered the above and foregoing CERTIFICATION OF EXECUTION OF UNINCORPORATED ORGANIZED SELF SUPPORTED CHRISTIAN CHURCH MINISTRY for the uses and purposes therein set forth. We also understand that this document, when witnessed by two or more people, becomes a legal binding document under the Law of the Land (Common Law).

Executed this 28th day of March , 2010

Witness: Vincent C Walsh Witness signature: _____

Address: 13412 SE 136 Harold St, Portland, OR 97236

Witness: Dale wardlow Witness signature: _____

Address: 10825 wAyPitch Av Nc SAlem ore 47385

9

## Exhibit 16
## Clackamas County
## 1011 W. Main Street, Molalla
## 52E08BC08703

APN: **01091945**                    Statutory Warranty Deed                    File No.: **7000-3652801 (JEJ)**
                                     - continued

### EXHIBIT A

**LEGAL DESCRIPTION:** Real property in the County of Clackamas, State of Oregon, described as
follows:

**A portion of that tract of land conveyed to Stafford Development Company, LLC in deed
recorded as Document No. 2020-102551, Clackamas County Deed Records, together with
that tract of land conveyed to Stafford Homes & Land LLC by deed recorded as Document No.
2020-057277, Clackamas County Deed Records, being a portion of Tract 27, The Shaver
Place located in the Northwest quarter of Section 8, Township 5 South, Range 2 East of the
Willamette Meridian, Clackamas County, Oregon being more particularly described as
follows:**

**• Beginning at a point on the North line of that tract of land conveyed to Stafford
Development Company, LLC in the deed recorded as Document No. 2020-102551 Clackamas
County Deed Records located South 81°44'47" East 150.02 feet from the Southwest corner
of Lot 30, Bear Creek, Clackamas County Survey Records,**

**• thence South 8°38'45" West 222.24 feet to the Northerly right of way line of Oregon State
Highway No. 211;**

**• thence South 81°32'33" East along said Northerly right of way line 253.85 feet to the East
line of Tract 27, The Shaver Place;**

**• thence North 8°40'41" East along the East line of said Tract 27, 223.14 feet to the
Southeast corner of Lot 16, Bear Creek, Clackamas County Survey Records;**

**• thence North 81°44'47" West along the South line of said Bear Creek 253.98 feet to the
Point of Beginning.**

**EXCEPTING THEREFROM that portion described in that certain Street Dedication recorded
December 4, 2020 as Fee No. 2020 102635.**

Page 3 of 3

*House*

## **Exhibit 17**
## **Clackamas County**
## **15021 S. Macksburg Rd, Molalla**
## **52E03A 01400**

Job No. 19-723?
Client: Wes Rea...

Tax Lot 'F'

A portion of that tract land described in Document No. 2019-072431,
Clackamas County Deed Records, situated in the northeast one-quarter of
Section 3, Township 5 South, Range 2 East of the Willamette Meridian,
Clackamas County, Oregon, said portion of land being more particularly
described as follows:

BEGINNING at a point in the northeasterly line of said Document No.
2019-072431 tract from which a five-eighths inch diameter iron rod with a
yellow plastic cap marked 'LOVE LAND SURVEYS, INC.' found at the
southeast corner of the northwest one-quarter of the northeast one-quarter of
said Section 3, bears South 45°33'39" East, 329.29 feet and South 0°19'31"
West, 61.69 feet; THENCE from said beginning point South 44°26'21"
West, 384.59 feet to the southwesterly line of said tract; THENCE North
45°33'39" West along said southwesterly line, 169.87 feet to the most
westerly corner of said tract; THENCE North 44°36'21" East along the
northwesterly line of said tract, 384.59 feet to the most northerly corner of
said tract; THENCE South 45°33'39" East along said northeasterly line,
169.87 feet to the POINT OF BEGINNING.
Containing 1.50 acres



REGISTERED
PROFESSIONAL
LAND SURVEYOR

OREGON
JULY 11, 2006
LEE A. SPURGEON
65603LS

EXPIRES: 06/30/2022



**Exhibit 18**
**Clackamas County**
**Macksburg Rd, Molalla**
**52E03A 01401**

LEGAL DESCRIPTION

All that land remised, released and quitclaimed to Wesley Ream by special warranty deed recorded as Document No. 2019-014099, Clackamas County Deed Records, situated in Government Lot 1 in the northeast one-quarter of Section 3, Township 5 South, Range 2 East of the Willamette Meridian, Clackamas County, Oregon, said land surveyed and filed as Record of Survey No. 2018-246, Clackamas County Survey Records and more particularly described as follows:

BEGINNING at a five-eighths inch diameter iron rod with a yellow plastic cap marked 'LS 1015' found at the northeast corner of that tract of land described in Document No. 2003-013351, Clackamas County Deed Records, from which a three and one-quarter inch diameter bronze disk found at the north one-quarter corner of said Section 3 bears North 89°40'24" West, 665.44 feet; THENCE from said iron rod, South 28°47'55" East along the east line of said Document No. 2003-013351 tract, 762.10 feet to a five-eighths inch diameter by 30 inch long iron rod with a yellow plastic cap marked 'TOWNSHIP SURVEYS' set at the southeast corner of said tract; THENCE North 86°50'11" West along the south line of said Document No. 2003-013351 tract, 317.82 feet to a five-eighths inch diameter iron rod with a yellow plastic cap marked 'LS 1015' found at an angle point in said south line; THENCE North 85°04'20" West along the south line of said tract, 76.24 feet to a five-eighths inch diameter by 30 inch long iron rod with a yellow plastic cap marked 'TOWNSHIP SURVEYS' set at the northeast corner of that tract of land described in Document No. 2018-023476, Clackamas County Deed Records;  THENCE South 9°51'16" West along the east line of said Document No. 2018-023476 tract, 26.45 feet to a five-eighths inch diameter by 30 inch long iron rod with a yellow plastic cap marked 'TOWNSHIP SURVEYS' set at a point of curvature in said east line; THENCE 31.76 feet along the arc of a 56.34 foot radius curve to the right, having a delta of 32°18'00" and a chord of 31.34 feet which bears South 26°00'16" West to a five-eighths inch diameter by 30 inch long iron rod with a yellow plastic cap marked 'TOWNSHIP SURVEYS' set at a point of compound curvature in said east line; THENCE 62.12 feet along the arc of a 257.30 foot radius curve to the right, having a delta of 13°50'00"

θ

and a chord of 61.97 feet which bears South 49°04'16" West to a five-eighths inch diameter by 30 inch long iron rod with a yellow plastic cap marked 'TOWNSHIP SURVEYS' set at a point of tangency in said east line; THENCE South 55°59'16" West along said east line, 61.50 feet to a five-eighths inch diameter by 30 inch long iron rod with a yellow plastic cap marked 'TOWNSHIP SURVEYS' set at a point of curvature in said east line; THENCE 57.65 feet along the arc of a 271.88 foot radius curve to the left, having a delta of 12°09'00" and a chord of 57.55 feet which bears South 49°54'46" West to a five-eighths inch diameter by 30 inch long iron rod with a yellow plastic cap marked 'TOWNSHIP SURVEYS' set at a point of tangency in said east line; THENCE South 43°50'16" West along said east line, 96.40 feet to the center of a creek, being the most northerly corner of that tract of land described in Document No. 2018-022612, Clackamas County Deed Records; THENCE South 36°33'04" East along the center of said creek, 99.77 feet to a change in the direction thereof; THENCE South 48°07'47" East along the center of said creek, 14.70 feet to a change in the direction thereof; THENCE South 27°41'51" East along the center of said creek, 18.78 feet to a change in the direction thereof; THENCE South 56°02'33" East along the center of said creek and the southeasterly prolongation thereof, 222.82 feet to a five-eighths inch diameter by 30 inch long iron rod with a yellow plastic cap marked 'TOWNSHIP SURVEYS' set at the most easterly corner of said Document No. 2018-022612 tract, said corner also being the most easterly corner of that tract of land described in Book 446, Page 721, Clackamas County Deed Records; THENCE South 82°11'55" West along the southeasterly line of said Document No. 2018-022612 tract, 144.52 feet to a five-eighths inch diameter by 30 inch long iron rod with a yellow plastic cap marked 'TOWNSHIP SURVEYS' set at an angle point in said southeasterly line; THENCE South 44°26'21" West along said southeasterly line, 20.00 feet to a five-eighths inch diameter by 30 inch long iron rod with a yellow plastic cap marked 'TOWNSHIP SURVEYS' set at the most southerly corner of said Document No. 2018-022612 tract, said corner being on the northeasterly line of that tract of land described in Document No. 2017-052892, Clackamas County Deed Records; THENCE South 45°33'39" East along said northeasterly line, 414.34 feet to a stone with 'X' found at the most westerly corner of that tract of land described in Document No. 2006-059273, Clackamas County Deed Records; THENCE South 89°20'27" East along the most westerly north line of said Document No. 2006-059273 tract, 491.84 feet to a five-eights inch diameter iron rod with a yellow plastic cap marked 'LOVE LAND SURVEYS, INC.' found at

the southwest corner of the northeast one-quarter of the northeast one-quarter of said Section 3; THENCE North 0°19'31" East, along the west line of the northeast one-quarter of the northeast one-quarter of said Section 3, a distance of 886.59 feet to the most southerly corner of Parcel 2, PARTITION PLAT NO. 1996-058; THENCE North 28°46'12" West along the southwesterly line of said Parcel 2, a distance of 629.43 feet to a point on the north line of said Section 3; THENCE North 89°40'24" West along said north line, 343.43 feet to the PLACE OF BEGINNING.

Said tract of land contains 17.545 acres more or less

④

**Exhibit 19**
**Clackamas County**
**Macksburg Rd, Molalla**
**52E03A 01402**

A portion of that tract of land described by Deed Document No. 2019-072431,
Clackamas County Deed Records, located in Government Lot 1 in the northeast one
quarter of Section 3, Township 5 South, Range 2 East of the Willamette Meridian in
Clackamas County, Oregon and which is more particularly described as follows:

Beginning at a one inch inside diameter iron pipe found at the most easterly corner
of the W.H. Vaughan Donation Land Claim No. 47; thence North 45°33'39" West
along the northeast line of said W.H. Vaughan donation land claim, 2,121.22 feet to
a nine inch by six inch stone with an "+" on top at the intersection of said northeast
line and the north line of the south one-half of the northeast one-quarter of said
Section 3, as determined by record survey SN 2011-040, Clackamas County Survey
Records; thence South 89°20'27" East along the north line of the south one-half of
the northeast one-quarter of Section 3, a distance of 143.02 feet to the True Point of
Beginning; thence continuing South 89°20'27" East along said north line of the south
one-half of the northeast one quarter of Section 3, a distance of 348.82 feet to a
five-eighths inch diameter iron rod with a yellow plastic cap marked "LOVE LAND
SURVEYS, INC." at the midpoint of said north line of the south one-half of the
northeast one-quarter of Section 3; thence North 00°19'31" East along the east line
of said Document No 2019-072431 tract, 61.69 feet; thence North 45°33'39" West
along the northeast line of said Document No. 2019-072431 tract, 208.90 feet; thence
South 44°26'21" West, 285.63 feet to the True Point of Beginning. Said tract contains
0.934 acres, more or less.

**Exhibit 20**
**Clackamas County**
**Macksburg Rd, Molalla**
**52E03A 01403**

Job No. 19-7232
Client: Wes Rear

Tax Lot 'E'

A portion of that tract land described in Document No. 2019-072431, Clackamas County Deed Records, situated in the northeast one-quarter of Section 3, Township 5 South, Range 2 East of the Willamette Meridian, Clackamas County, Oregon, said portion of land being more particularly described as follows:

BEGINNING at a point in the northeasterly line of said Document No. 2019-072431 tract from which a five-eighths inch diameter iron rod with a yellow plastic cap marked 'LOVE LAND SURVEYS, INC.' found at the southeast corner of the northwest one-quarter of the northeast one-quarter of said Section 3, bears South 45°33'39" East, 329.29 feet and South 0°19'31" West, 61.69 feet; THENCE from said beginning point South 44°26'21" West, 384.59 feet to the southwesterly line of said tract; THENCE South 45°33'39" East along said southwesterly line, 80.13 feet to a stone with 'X' found on the south line of the northwest one-quarter of the northeast one-quarter of said Section 3; THENCE South 89°20'27" East along last said line, 142.58 feet; THENCE North 44°26'21" East, 285.94 feet to the northeasterly line of said Document No. 2019-072431 tract; THENCE North 45°33'39" West along said northeasterly line, 183.07 feet to the POINT OF BEGINNING.
Containing 1.50 acres



REGISTERED
PROFESSIONAL
LAND SURVEYOR

OREGON
JULY 11, 2006
LEE A. SPURGEON
65603LS

EXPIRES: 06/30/2022

2

## Exhibit 21
## Clackamas County
## Macksburg Rd, Molalla
## 52E03A 02000

THAT certain parcel of real property situated in the northwest one-quarter and northeast one quarter of Section 3, Township 5 South, Range 2 East of the Willamette Meridian, Clackamas County, Oregon, and more particularly described as follows:

BEGINNING at a five-eighths inch diameter iron rod with a yellow plastic cap marked 'LS 1015' found at the most westerly northwest corner of that tract of land described in Document No. 2003-013351, Clackamas County Deed Records, from which a three and one-quarter inch diameter bronze disk found at the north one-quarter corner of said Section 3 bears North 0°11 '24" East, 153.47 feet; THENCE from said iron rod, South 0°11 '24" West along the west line of said Document Nos. 2003-013351 and Document No. 2003-164798, Clackamas County Deed Records, 483.71 feet to a five-eighths inch diameter iron rod with a yellow plastic cap marked 'LOVE 747' found at the southwest corner of that tract of land described in Document No. 2003-164798, Clackamas County Deed Records, said southwest corner being on the northeasterly line of that tract of land described in Document No. 2017-082123, Clackamas County Deed Records; THENCE North 45°33'39" West along said northeasterly line, 341.07 feet to a five-eighths inch diameter by 30 inch long iron rod with a yellow plastic cap marked 'TOWNSHIP SURVEYS' set at the most southerly corner of that tract of land described as Parcel II in Document No. 2014-019997; THENCE North 45°01 '32" East along the southeasterly line of last said tract, 346.51 feet to the PLACE OF BEGINNING.

# Exhibit 22

# Clackamas County

## 14751 S. Leabo Road, Molalla

DEED

skyveiw Foundation
                    GRANTOR

Trick FOUNDATION
                    GRANTEE

**2023-019187**

$93.00

06/07/2023 09:14:42 AM

After Recording return to:

Trick FOUNDATION    WESREAM
14751 s leabo rd        Wce Oem
Molalla, Or 97038
Until requested otherwise send all tax statements to:

Trick FOUNDATION
14751 s leabo rd
Molalla, Or 97038

D-D            Cnt=1 Stn=9 COUNTER1
$5.00 $16.00 $62.00 $10.00

_____at___o'clock__M, and recorded in
book/reel/volume No____on page____or as
fee/file instrument/microfilm/reception No_____,
Record of _____of said County
Witness my hand and seal of County affixed

_____
Name                    Title

By_____, Deputy

---

### STATUTORY BARGIN AND SALE DEED

KNOW ALL MEN BY THESE PRESENTS, that Skyveiw Foundation hereinafter called "GRANTOR", for the consideration hereinafter stated, paid to GRANTOR by Trick FOUNDATION, hereinafter referred to as "GRANTEE," conveys to Grantee, all right, title and interest in and to the following real property situated in Clackamas County, State of Oregon, described as:

### For LEGAL DESCRIPTION
**Section 33 TOWNSHIP 5S RANGE 2E TAX LOT 01501**
Commonly called 14751 SOUTH LEABO RD MOLALLA, OR 97038

Together with all of the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining. To have and to hold the above described and granted premises with the appurtenances unto GRANTEE, the heirs, successors and assigns forever. The true and actual consideration given for this conveyance is $850,000.00.

BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANFERRING FEE TITLE SHOULD INQUIRE ANOUT THE PERSONS RIGHT IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAW 2007. THIS INSTRUMENT DOES NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF ACCEPTABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTIMG THIS INSTRUMENT, THE PERSON AQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL , TO DETERMINE ANY LIMITS ON LAWSUITS AGAINTS FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PRPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAW 2007

_Skyveiw Foundation Wesley Ream Director_
Skyveiw Foundation

STATE OF OREGON, County of _Clackamas_ )ss
This instrument was acknowledged before me on _June 7th_, 2023 by Skyveiw Foundation
                                                        Wesley Ream Sr _Director_

_____Notary Public        Commission expires _3 - 11 - 2025_

OFFICIAL STAMP
LEAH FAITH PRATT
NOTARY PUBLIC - OREGON
COMMISSION NO. 1009966
MY COMMISSION EXPIRES MARCH 11, 2025

# Exhibit 23
# Lake County
# Acct 1336 - 5.0 Acres

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Map** | 26S16E33-D0-00500 | | | **Tax Status** | Assessable | | |
| **Code - Tax ID** | 1402 - 1336 | | | **Account Status** | Active | | |
| | | | | **Subtype** | NORMAL | | |
| **Legal Descr** | See Record | | | | | | |
| **Mailing** | TRICK FOUNDATION | | | **Deed Reference #** | See Record | | |
| | 14751 S LEABO ROAD | | | **Sales Date/Price** | See Record | | |
| | MOLALLA OR  97038 | | | **Appraiser** | | | |

| **Property Class** | 800 | **MA** 04 | **SA** 00 | **NH** 077 |
|---|---|---|---|---|
| **RMV Class** | 800 | | | |

| Site | Situs Address | City |
|---|---|---|
| | UNDETERMINED SITUS ADDRESS | UNDETERMINED CITY |

| Value Summary | | | | | |
|---|---|---|---|---|---|
| Code Area | RMV | MAV | AV | RMV Exception | CPR % |
| 1402        Land | 7,260 | | **Land** | 0 | |
|                   Impr | 0 | | **Impr** | 0 | |
| **Code Area Total** | 7,260 | 4,520 | 4,520 | 0 | |
| **Grand Total** | 7,260 | 4,520 | 4,520 | 0 | |

| Land Breakdown | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Code Area | ID # | RFPD | Ex | Plan Zone | Value Source | Trend % | Size | Land Class | Trended RMV |
| 1402 | 1 | ☑ | | | Recreational Land | 114 | 5.00 AC | | 7,260 |
| | | | | | **Code Area Total** | | 5.00 AC | | 7,260 |

| Improvement Breakdown | | | | | | | |
|---|---|---|---|---|---|---|---|
| Code Area | ID # | Year Built | Stat Class | Description | Trend % | Total Sqft | Ex% | MS Acct | Trended RMV |

# __Exhibit 24__
# **Lake County**
# **Acct 7100 - 40.0 Acres**

| | | | | |
|---|---|---|---|---|
| **Map** | 27S20E00-00-01202 | | **Tax Status** | Assessable |
| **Code - Tax ID** | 1402 - 7100 | | **Account Status** | Active |
| | | | **Subtype** | NORMAL |
| **Legal Descr** | See Record | | | |
| **Mailing** | COBALT FOUNDATION | | **Deed Reference #** | See Record |
| | 14751 S LEABO RD | | **Sales Date/Price** | See Record |
| | MOLALLA OR  97038 | | **Appraiser** | |

| | | | | |
|---|---|---|---|---|
| **Property Class** | 800 | **MA** 04 | **SA** 00 | **NH** 077 |
| **RMV Class** | 800 | | | |

| Site | Situs Address | City |
|---|---|---|
| | UNDETERMINED SITUS ADDRESS | UNDETERMINED CITY |

| Value Summary | | | | | |
|---|---|---|---|---|---|
| **Code Area** | **RMV** | **MAV** | **AV** | **RMV Exception** | **CPR %** |
| 1402      Land | 16,010 | | Land | 0 | |
|      Impr | 0 | | Impr | 0 | |
|      Code Area Total | 16,010 | 14,949 | 14,949 | 0 | |
|      Grand Total | 16,010 | 14,949 | 14,949 | 0 | |

| Land Breakdown | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Code Area** | **ID #** | **RFPD** | **Ex** | **Plan Zone** | **Value Source** | **Trend %** | **Size** | **Land Class** | **Trended RMV** |
| 1402 | 1 | ☑ | | | Recreational Land | 114 | 40.00 AC | | 16,010 |
| | | | | | Code Area Total | | 40.00 AC | | 16,010 |

| Improvement Breakdown | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Code Area** | **ID #** | **Year Built** | **Stat Class** | **Description** | **Trend %** | **Total Sqft** | **Ex%  MS Acct** | **Trended RMV** |

# <u>Exhibit 25</u>
# Lake County
# Acct 7450 - 40.0 Acres

| | | | | | | |
|---|---|---|---|---|---|---|
| **Map** | 27S21E00-00-02102 | | | **Tax Status** | Assessable | |
| **Code - Tax ID** | 1402 - 7450 | | | **Account Status** | Active | |
| | | | | **Subtype** | NORMAL | |
| **Legal Descr** | See Record | | | | | |
| **Mailing** | COBALT FOUNDATION | | | **Deed Reference #** | See Record | |
| | 14751 S LEABO RD | | | **Sales Date/Price** | See Record | |
| | MOLALLA OR  97038 | | | **Appraiser** | | |

| | | | | |
|---|---|---|---|---|
| **Property Class** | 800 | MA | SA | NH |
| **RMV Class** | 800 | 04 | 00 | 077 |

| Site  Situs Address | City |
|---|---|
| UNDETERMINED SITUS ADDRESS | UNDETERMINED CITY |

| Value Summary | | | | | | |
|---|---|---|---|---|---|---|
| Code Area | RMV | MAV | AV | | RMV Exception | CPR % |
| 1402 | **Land** 16,010 | | | **Land** | 0 | |
| | **Impr** 0 | | | **Impr** | 0 | |
| **Code Area Total** | 16,010 | 14,805 | 14,805 | | 0 | |
| **Grand Total** | 16,010 | 14,805 | 14,805 | | 0 | |

| Land Breakdown | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Code Area | ID # | RFPD | Ex | Plan Zone | Value Source | Trend % | Size | Land Class | Trended RMV |
| 1402 | 1 | ☑ | | | Recreational Land | 114 | 39.59 AC | REC | 16,010 |
| | | | | | **Code Area Total** | | 39.59 AC | | 16,010 |

| Improvement Breakdown | | | | | | | |
|---|---|---|---|---|---|---|---|
| Code Area | ID # | Year Built | Stat Class | Description | Trend % | Total Sqft | Ex% MS Acct | Trended RMV |